CASE 6—FEBRUARY 4.

## Commonwealth vs. Coleman, &c.

### APPEAL FROM M'LEAN CIRCUIT COURT.

1. Section 94 of the Criminal Code merely gives the circuit court the right, after the expiration of the term at which the bail is forfeited, to hear and pass upon matters of defense which, under the previous law, were only available during the term. The discretion thus conferred, though large, is neither arbitrary nor unlimited, but is a judicial discretion, and when abused, is liable to be corrected. Its exercise will, however, always be presumed to have been proper, until the party complaining shows to the contrary.

2. A defendant indicted for felony, whose recognizance had been forfeited, surrendered himself to the court before a judgment was entered against the bail, who thereupon moved to dismiss the proceeding upon the forfeited bond; this, though not a formal, was a substantial application for remission, and the motion having been sustained by the court, must be deemed to have been an exercise of the discretion vested in the judge by the section of the Code *supra*. And the evidence heard upon the motion not appearing, the presumption in favor of the action of the circuit court must prevail.

3. A defendant charged with felony appeared upon the day named in his recognizance, and pleaded to the indictment. He was thereupon put upon trial, and by order of court was placed in the custody of the sheriff during the progress of the trial; but after the jury had retired, and whilst they were considering of their verdict, he made his escape from the sheriff, and failed to appear for judgment upon the verdict found by the jury. *Held*—That the sureties in the recognizance were not liable for his escape.

4. The mere appearance of the defendant in discharge of his recognizance, without an order of court taking charge and control of him, does not release his sureties.

A. J. JAMES, Attorney General, for Commonwealth.

JUDGE STITES DELIVERED THE OPINION OF THE COURT:

At the March term, 1858, of the McLean circuit court, John Riordon, who stood indicted for felony, entered into recogni-

zance in the penalty of one hundred and fifty dollars, with appellees as his sureties, for his appearance at the ensuing September term of said court. The condition was that he "should appear in said court on the *first* day of its next September term, and not depart therefrom without leave of the court."

On the day named, Riordon appeared and pleaded to the indictment. He was thereupon put on trial, and by order of court was placed in the custody of the sheriff during the progress of the trial; but after the jury had retired, and whilst they were considering of their verdict, he made his escape from the sheriff, and disappeared. In a few moments thereafter the jury came in with a verdict, finding him guilty of a misdemeanor, and assessing his fine at fifty dollars; and, also, that he should be confined six months in the county jail.

At a subsequent day of the same term—the defendant, Riordon, having failed to appear for judgment—the recognizance was adjudged forfeited, and summons issued against the sureties, returnable to the April term; but no judgment was entered upon the finding of the jury.

The summons was served, and afterwards, at the September term, 1859, the following order was made in the case:

"The attorney for the Commonwealth came, and the defendant came in discharge of his recognizance. It is therefore adjudged by the court that the defendant make his fine to the Commonwealth in the payment of fifty dollars, and that he be taken, &c.; and the Governor of Kentucky having remitted that portion of the verdict of the jury requiring the defendant to be imprisoned in the county jail, the same is not entered against him; and that he pay costs of the prosecution, &c."

Thereupon the sureties came, and upon their motion the proceeding upon the forfeited recognizance was dismissed, notwithstanding the objection of the Commonwealth's attorney, who excepted to the order, and has brought the case up—complaining that the sureties were improperly relieved.

That they were properly discharged is obvious, for two reasons:

1. The Criminal Code (*sec.* 94) provides that, "if before judgment is entered against the bail the defendant be surren-

dered or arrested, the court may, at its discretion, remit the whole or any part of the sum specified in the bail bond."

In the case of the *Commonwealth vs. Thornton* (1 *Met.*, 381) it was contended that this section of the Code was unconstitutional, because, as was said, it infringed upon the pardoning power of the Executive. But it was held otherwise. And the court decided that it merely gave the circuit court the right, after the expiration of the term at which the bail was forfeited, to hear and pass upon matters of defense which, under the previous law, were only available during the term.

The discretion thus conferred, though large, is neither arbitrary nor unlimited, but is a judicial discretion, and, when abused, is liable to be corrected. Its exercise will, however, always be presumed to have been proper, until the party complaining shows to the contrary. The presumption of an abuse will not be indulged; the abuse must be shown.

The defendant, Riordon, had surrendered himself to the court before a judgment was entered against the bail, who thereupon moved to dismiss the proceeding upon the forfeited bond; this, though not a formal, was a substantial application for a remission, and having been sustained by the court, must be deemed to have been an exercise of the discretion vested in the judge by the section of the Code *supra*.

What evidence was heard upon the motion, or whether the order of dismissal was sustained by it, does not appear—there being no bill of exceptions as to that point; and, as repeatedly settled by this court, the presumption already referred to, in favor of the action of the circuit court, must prevail.

2. The facts disclosed by the record show that appellees were entitled, as a matter of right, to be discharged from liability as bail.

Riordon, the defendant, appeared to the indictment, and, by an order of court, was placed in the custody of the sheriff during the trial. This of course deprived the appellees of all control over him, and necessarily discharged them from liability for his escape when he was beyond their power and under the control of the officer of the court.

Under the Criminal Code (*sec.* 81) they had the power to surrender him to the jailer at any time before the forfeiture of

their bond; and by the subsequent sections of the same chapter, could have arrested him for that purpose, or authorized any one else, of proper age, to have made the arrest for them. And it would be singular indeed if the law, which enables the bail thus to exonerate himself, should hold him responsible for an escape of the defendant after he had surrendered himself to the court before which he was bound to appear, and had, by an order of that court, been placed in the custody and keeping of its own officer, and thus placed beyond the control of the bail.

It is suggested, however, that such is the effect of the undertaking of the bail; and that, under section 88 of the Criminal Code, an escape of the defendant, or a failure to appear at any time when his presence may be lawfully required by the court, works a forfeiture of the bail bond, and operates to hold the bail responsible, notwithstanding he may have been taken from his custody and placed in that of the court.

Section 77 of the Criminal Code provides that the bail bond shall contain substantially the following covenants:

1. That the party in custody and about to be admitted to bail "shall appear in the —— court, on the —— day of its —— term, to answer the charge against him."

2. That he shall, at all times, render himself amenable to the orders and process of said court; and

3. If convicted, shall render himself in execution thereof.

Now it must be borne in mind that this form was provided for all cases in which a party charged with a public offense can be held to bail—for misdemeanors of the lowest, as well as felonies of the highest, bailable grade.

It must be remembered, also, that the Criminal Code (*sec.* 69) provides, that " during the trial of an indictment for felony, the defendant shall be kept in custody; but for misdemeanors, may remain on bail during trial."

The propriety, as well as necessity of the undertakings of the bail that the party accused shall not only appear, but render himself amenable to the orders and process of the court, and, if convicted, surrender himself in execution of the judgment, in cases of mere misdemeanor, is obvious.

In such cases, after appearance, he is, or may be allowed, to stand upon his bail, and without the stipulations referred to,

might escape with impunity, and without subjecting his bail to any responsibility whatever. With the stipulations, however, their liability continues until the case is disposed of, and the defendant surrenders himself in execution of the judgment; and though not in custody of the court, he is subject to their control, and may be, at any moment, by them, or their order, arrested and surrendered to the court. Being thus answerable for him, they have the power to control his movements, and it is their duty to see that he complies with the undertakings of his bond.

Suppose, however, that on a trial for misdemeanor the court should, as it may do, refuse to allow the accused to stand on his bail, and by an order to that effect place him in the keeping of the sheriff or jailer, and whilst thus in his custody, and necessarily beyond the control of the bail, he should escape, would it be insisted that the bail should be held liable?

This, however, was an indictment for felony, and upon the trial in such cases the law requires that the defendant shall be kept in actual custody. The circuit court, in discharge of its duty, made an order placing the prisoner in the actual custody of the sheriff, and whilst thus in the sheriff's keeping, and before the return of the verdict, he escaped. Can it, with propriety, be contended that the bail should answer for him after he is taken, by law, from their control? We think not.

When the court took charge of the accused and placed him in the custody of its own officer, the power of the bail over him ceased. They had no longer any control over him, and having been deprived thereof by the act of the court, they were no longer answerable for his appearance for any purpose whatever.

Such has been the law for time immemorial, (*Bacon's Abridgment, title Bail,*) and we cannot believe that the authors of the Criminal Code intended to change it.

The case of the *Commonwealth vs. Ray* (*MS. opin. June,* 1859) differs materially from this. In that case there was simply an appearance of the defendant in discharge of his recognizance, and no order taking or placing him in custody of the officer of the court. He was still under the control of his sureties, and

they were, therefore, liable for his not remaining until disposed of by the court. The fact that he appeared in discharge of his recognizance, without an order of court taking charge and control of him, did not relieve them.

No error is perceived in the record prejudicial to appellant, and the judgment is therefore *affirmed*.