Wintersoll vs. Commonwealth.

---

CASE 11—BASTARDY CASE—SEPTEMBER 21

# Wintersoll vs. Commonwealth.

APPEAL FROM KENTON COUNTY COURT.

1. A defendant, charged with being the father of a bastard child, gave a recognizance for his appearance in court "to answer the charge." He appeared, pleaded not guilty, but was not surrendered nor taken into the custody of the court. The jury found a verdict against defendant, on which the court rendered judgment. In the meantime the defendant had escaped. To a summons on the recognizance, the surety averred that the escape of defendant was "without their consent or approbation." *Held*—That the appearance and plea of the defendant, and the facts alleged by the sureties, did not relieve them from liability.

2. To *answer the charge* is not merely to plead to it, but it is for the defendant to hold himself answerable to it until discharged by the court, or surrendered to its custody.

CARLISLE, HAMILTON & CARLISLE, for appellant, cited 3 *sec.*, *chap.* 6, *Rev. Stat.*; 2 *Met.* 383.

J. M. HARLAN, Attorney General, for Commonwealth, cited *Miller vs. Commonwealth, ante, p.* 14.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

In a proceeding of filiation against Clement Taphorn, as the putative father of a bastard child of Theresa Auker, he gave a recognizance, with the appellants as his sureties, for his appearance in court "*to answer the charge*" of bastardy. He appeared, and pleaded not guilty; but was not surrendered nor taken into the custody of the court. A jury was sworn, and returned a verdict, assessing against him $25 a year for twelve years for auxiliary maintenance of the child, to secure which the court adjudged that he should execute bonds, with approved security, or be imprisoned until execution of that order. In the meantime he had escaped, and could not be committed. The court thereupon adjudged the recognizance forfeited.

To a summons for judgment on the forfeiture the appellants, his sureties, relied in their answer on the appearance and plea as a discharge of their undertaking, and averred that his escape was without their "consent or approbation." The court sustained a demurrer to the answer, and pronounced judgment against them for $300; for reversing which they prosecute this appeal.

It is admitted that appearance in court did not, *per se*, discharge his recognizance. But counsel insist that his answer to the charge by his plea of not guilty fulfilled his entire obligation, and relieved his bail from further liability. We do not think so. Why did not his simple appearance have that effect? Only because the appearance itself did not put him in the custody of the court, but left him, as before, under the control and guaranty of his bail, who might, by surrendering him to the court, have escaped further responsibility. They chose not to deprive him of his liberty, and preferred to let him still stand free at their own responsibility. The court might have ordered him into the custody of the sheriff, and, if it had supposed that he was then standing without bail, it

ought to have done so. Why could the plea change this phase of the case? Did that translate him from the potential custody of his bail, and consign him to the actual custody of the court as its prisoner? Certainly not more than the appearance, nor as much. But as the recognizance required him only to appear "*to* answer" the charge, the counsel of the appellant argue that, by appearing and pleading, he performed all that they undertook that he should do, and that, when that was done, they had no more control over him, and were no longer responsible for him. But, to answer the charge is not merely to plead to it; but it is to hold himself answerable to it until discharged by the court or surrendered to its custody. To require him to plead to the charge would, in effect, be no more than to require him to appear to the charge. So far as the object of the security may be concerned, the plea was no better than the appearance, and did not change the legal attitude of his bail, his own *status*, or the power of the court over him. And if this be not so, the words "to answer the charge" were altogether superfluous and inoperative. We hold that he was under bail, and entitled to its privileges, until surrendered to the court; and that, consequently, before such surrender, the authority of the bail over him, and responsibility for him, continued as before his appearance.

The conclusion is fortified by the principle of the case of the *Commonwealth vs. Ray (MS.*, 1859), and is not inconsistent with, but rather strengthened by, that of the *Commonwealth vs. Coleman* (2 *Met.*, 383). In the latter case, the judge delivering the opinion, speculating on the motive for making, as the Code does, the condition of bail bonds in cases of misdemeanor more explicit and expressly comprehensive than for simple appearance to answer the charge, says: "In such cases, after appearance, he is or may be allowed to stand upon his bail;" implying that his sureties are still the custodians, and responsible; and therefore, when he adds, "and, without the stipulations referred to, *might* escape with impunity and without subjecting his bail to any responsibility," he should be understood as meaning that there might be danger of such a construction of his recognizance. Any other interpretation of the

entire sentence would make it illogical, and its two parts inconsistent with themselves. However this may be, the argument was merely illustrative, and is not an authoritative adjudication. We, too, believe, that, in all such cases, without surrender to the court's custody, the accused, after appearance, as before, stands "on his bail;" and we also presume, that, to put that beyond all question, the Code prescribes express stipulations to that effect. And, properly considered, we look on the case of the *Commonwealth vs. Coleman* as an authority rather for, than against, our opinion.

Wherefore, the judgment is affirmed.