[No. 10367.    Department Two.    July 30, 1912.]

## SUE I. PRIDE, *Appellant*, v. CONTINENTAL CASUALTY COMPANY, *Respondent*.[1]

INSURANCE—FORFEITURE—NONPAYMENT OF PREMIUMS.  An industrial accident policy lapses and is forfeited, where the premiums were to be deducted each month from the wages of the insured, who, for three consecutive months, quit the service and drew his full pay before the deductions could be made, giving no notice of his change in employment as required by the policy, which provided that no recovery could be had after default and prior to reinstatement.

INSURANCE—POLICY—CONSTRUCTION—LIFE OR ACCIDENT POLICY—"INDUSTRIAL INSURANCE."  An accident policy with premiums payable monthly, expiring one year after issuance, which made provision for weekly indemnity for disability and referred to the special class of employment in which the insured was engaged, although it also covers loss of life from "external, violent, and purely accidental means," is an "industrial" or accident policy and not a "life" insurance policy, within the meaning of Rem. & Bal. Code, §§ 6155, and 6159, providing that no policy of life or endowment insurance, except policies of industrial insurance where the premiums are payable monthly, shall be issued unless it contains all the provisions of the entire contract including the representations made, with the application attached, and unless so attached, it shall not be considered or received in evidence; hence in an action thereon, evidence as to the insured's assignment of his wages for the payment of premiums is admissible, although not part of the application.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered December 30, 1911, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action on an accident insurance policy.  Affirmed.

*O. C. Moore* and *John I. Melville*, for appellant.

*Roche & Onstine* (*M. P. Cornelius* and *Manton Maverick*, of counsel), for respondent.

[1]Reported in 125 Pac. 787.

Morris, J.—In this action appellant seeks to recover as beneficiary in a policy of insurance issued to her son, Elmo Pride, covering death through "external, violent and purely accidental means." The case was tried by the court without a jury, and findings and judgment having been entered in favor of respondent, this appeal follows.

Elmo Pride was, on March 4, 1910, the day the policy was issued, an employee of the Spokane, Portland & Seattle Railway Company, as a roundhouse man, at Vancouver. The amount of the policy was $1,000, and the annual premium $20.40, which was to be paid in four monthly installments of $5.10 each. To provide for the payment of this premium when due, Elmo Pride, on March 4, 1910, gave the respondent an order on the paymaster of the railway company, authorizing and requesting the railway company to pay these installments of premium to respondent, as they became due, and deduct them from his wages in the months of March, April, May and June. This order gave the character and place of his service with the railway, as did the application, and provided that, in case of any change in his employment, either as to class of service or location, prompt notice should be given. It was also provided in the policy that the application and paymaster's order should be a part thereof, and that no recovery could be had upon the policy in case of loss incurred subsequent to a default in the payment of any installment of premium and prior to any reinstatement, which was also therein provided for. This paymaster's order was received by respondent on March 9, and on March 11 the same was forwarded to the paymaster of the railway company for the collection of the first premium installment, which, under its terms, was payable from the March wages of Elmo Pride.

In order to facilitate the collection of the installments of premium as they became due and payable under the policy and paymaster's order, the respondent forwarded to the railway company what is called "Paymaster's Return List,"

giving the names of employees carrying policies, including that of Elmo Pride, with his occupation, location, head of his department, and the amount of the first installment of premium payable from his wages for the month of March. This was received by the railway company on March 22, and in the following month was returned to respondent, notifying it that no deduction could be made from the March wages of Elmo Pride, for the reason that Elmo Pride had quit the service of the railway company and had drawn all the wages due him. Respondent, during the month of April, in the exercise of the option given it in the policy, mailed a like return list to the railway company, and in due time was notified that no payments could be made because Elmo Pride was no longer in its service. Respondent thereupon marked the policy as lapsed. No further effort was made to collect the premium.

The facts as to the employment of Elmo Pride with the railway company seem to be about these: He was employed as a roundhouse laborer for twenty days in March, for which service he was, on March 22, paid the whole amount then due him, and on the same day he quit the service of the railway company. Subsequently he worked two and three-elevenths days in March in the same capacity, when he again quit the service, receiving his pay in full on April 1. He worked three days in April in the same capacity, quitting April 19, and being paid in full. On May 1 he again entered the service of the railway company as a bridge builder, and continued to so work until his death on June 7, from cause within the terms of the policy if it was then in force. No notification was given of these various changes in employment, as provided in the policy.

Upon these facts the court below found in favor of respondent, and in our judgment its ruling should be sustained. There could be no question in the mind of Elmo Pride as to the failure to pay his installments of premiums. He knew they were to be paid out of his wages. He knew the amount

to be paid and when, and with such knowledge he in each instance quits the railway company's service before it could deduct the premium from his wages, and draws all that was then due him. He knew the premium installments were not paid out of wages earned by him in March, April, or May, and that it was impossible for the agent he had empowered to make such payments on his behalf to do so, for the reason that he had demanded and received all sums earned by him. His default was deliberate and intentional, with full knowledge of all the circumstances, and his beneficiary must abide its consequences.

The chief assignment of error upon which appellant contends for a reversal is error of the court below in receiving the application and paymaster's order as evidence, and in admitting evidence of officers of the railway company and of respondent respecting the nonpayment of premiums. This objection is based upon §§ 6155 and 6159, Rem. & Bal. Code. The first of these sections provides that:

"No policy of life or endowment insurance shall be issued or delivered in this state until . . . nor shall such policy, except policies of industrial insurance where the premiums are payable monthly or oftener, be so issued or delivered after January 1, 1910, unless it contains in substance the following provisions: . . . (3) A provision that the policy and the application therefor shall constitute the entire contract between the parties, and that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, unless a copy of such statement is contained in or attached to the policy, and that no such statement shall be used in defense to a claim under the policy unless it is contained in a written application; and a copy of such application shall be indorsed upon or attached to the policy when issued."

Section 6159 contains the following provision:

"Every policy, except industrial or those calling for premiums monthly or oftener, shall have attached thereto a correct copy of the application, and unless so attached the same

shall not be considered a part of the policy or received in evidence."

These sections are said to be decisive of the error contended, because neither the application nor the paymaster's order was attached to the policy. These sections in no way affect the right of recovery upon the policy in suit. This policy is neither a life nor endowment policy within the meaning of the law, but falls within the exception as an industrial or accident insurance policy. By its terms it expires one year after issuance, unless renewed; and while it covers loss of life from "external, violent and purely accidental means," and is therefore in one sense an insurance on life in which the payment of the insurance money is contingent upon loss of life, it is nevertheless evident that it is not such a life insurance policy as was contemplated by the legislature in the enactment of these two sections. It contains provisions for the payment of a weekly indemnity in case of accident or injury arising from numerous violent or external means. It refers to the industry and special class of employment the assured was engaged in at the time. It makes provision for his inability, because of injuries from purely accidental means, to engage in any labor or occupation. It is in every sense of the term a policy of industrial insurance, as contemplated by the legislature in excluding such policies from the provisions of the law. If this is not industrial insurance, we fail to appreciate what character of insurance should be so designated. If the legislature had in mind any distinction between life insurance and industrial insurance as those terms are used in ordinary understanding, and it is evident from making the latter class of insurance an exception to the rules governing the former class that such was the intention, then it must be evident that this policy falls within the exception, or it would be impossible to indicate to a person of ordinary understanding what was meant by the expression industrial insurance as distinguished from straight life or endowment insurance. These views, as applied to a like distinction in similar stat-

utes, are supported by: *National Life & Acc. Ins. Co. v. Lokey,* 166 Ala. 174, 52 South. 45; *Standard Life & Acc. Ins. Co. v. Carroll,* 86 Fed. 567, 41 L. R. A. 194; *National Acc. Soc. v. Dolph,* 94 Fed. 743; *Fidelity & Casualty Co. v. Dorough,* 107 Fed. 389; *Mutual Reserve Life Ins. Co. v. Dobler,* 137 Fed. 550.

This policy is further within the exception, in that it provided for monthly payments of premium. The paymaster's order, neither within the contemplation of the law nor of the parties, could have been attached to the policy, as it must be surrendered to and retained by the railway company as its authority and justification for retaining the monthly payments from the wages of Elmo Pride and forwarding them to respondent for the benefit of the assured. It was therefore competent, under any interpretation of the law, for the officials of the railway company to testify to the receipt of this order and the reasons why it was not complied with.

We therefore concur in the findings of the lower court, and its judgment is sustained.

MOUNT, ELLIS, PARKER, and FULLERTON, JJ., concur.