[No. 12247.   Department One.   May 27, 1915.]

W. H. GODDARD, *Respondent*, v. NORTHWESTERN MUTUAL
FIRE ASSOCIATION, *Appellant*.[1]

INSURANCE—FORFEITURE—NONPAYMENT OF NOTES FOR PREMIUMS.
Where an insurance policy does not prohibit payment of the pre-
mium by promissory note, and the company's agents issued a cer-
tificate of assignment to the insured reciting the payment of the
premium, the acceptance of the note for the premium is a payment
thereof; and nonpayment of such note at maturity does not work a
forfeiture of the policy.

APPEAL AND ERROR—HARMLESS ERROR—EXCLUSION OF EVIDENCE. In
an action on a fire insurance policy for a loss of wheat in a ware-
house, in which the defense was that the plaintiff had procured the
burning of the warehouse, the exclusion of evidence of the incen-
diary burning of another warehouse in which plaintiff had insured
wheat in storage, and of the plaintiff's financial condition, is harm-
less, where there was no other substantial evidence of the incen-
diary origin of the fire; since the excluded evidence was insufficient
to sustain the defense.

INSURANCE—EXTENT OF LOSS—SALVAGE. In an action for loss on
a fire insurance policy, a verdict for the full market value of wheat
lost in the burning of a storage warehouse was excessive, where,
after the fire, the warehouseman sold a considerable quantity of
damaged wheat, the larger portion of which was plaintiff's, and gave
plaintiff credit thereon; and a proportionate reduction should be
made in the amount of the verdict and judgment.

Appeal from a judgment of the superior court for Whit-
man county, McCroskey, J., entered April 29, 1914, upon
the verdict of a jury rendered in favor of the plaintiff for
$5,523.89, in an action upon an insurance policy.   Reversed,
unless $800 is remitted.

*Corwin S. Shank, H. C. Belt*, and *F. L. Stotler*, for appel-
lant.

*Thomas A. E. Lally* (*Charles R. Hill* and *Martin J. Gan-
non*, of counsel), for respondent.

[1]Reported in 148 Pac. 893.

PARKER, J.—This is an action upon an insurance policy issued by the defendant to its agents, Canutt & Conn, upon grain in storage as specified in certificates of assignment to be issued by Canutt & Conn as contemplated by the terms of the policy; $5,600 of the insurance evidenced by the policy having been assigned by Canutt & Conn to the plaintiff, insuring the plaintiff against loss or damage by fire on wheat owned by him while stored in the Kerr-Gifford warehouse at Warner's Siding, in Whitman county. Trial before the court and a jury resulted in a verdict and judgment against the defendant for $5,523.89, from which it has appealed to this court.

It is contended by counsel for appellant that the trial court erred in overruling their challenge to the sufficiency of the evidence to sustain any recovery by the respondent, made upon the ground that there was default on the part of respondent in the payment of the premium upon the insurance assigned to him, as required by the terms of the policy. Among other provisions of the policy is the following:

"The premium specified in this policy shall be due on the date the insurance becomes effective. Thirty days' grace will be allowed before the payment becomes delinquent. This association shall not be liable on this policy for the payment of any loss or damage that may occur to the property insured herein when the insured is delinquent on any premium payment due on this policy."

Upon the issuance of the certificate of assignment by Canutt & Conn to respondent of $5,600 of the insurance, which certificate is signed by appellant by its secretary as well as by Canutt & Conn, it was therein recited that "In consideration of thirty-five dollars to me (us) in hand paid by W. H. Goddard, I (we) hereby assign to him fifty-six hundred dollars of insurance under policy A 1517 issued to me (us) by the Northwestern Mutual Fire Association . . . .", followed by terms and conditions to be read in connection with the policy; thus in effect acknowledging receipt

of the $35 premium to be paid by respondent for such assigned insurance. Upon delivery of this certificate of assignment to respondent, instead of paying the $35 premium in cash, he executed and delivered to Canutt & Conn his promissory note for that sum, drawing six per cent interest. This note matured June 19, 1912, sixty days after the date and delivery of the certificate of assignment by which respondent's insurance became effective. The fire occurred on July 23, 1912, at which time the note given by respondent in payment of the premium had matured and was unpaid. A short time thereafter the principal and interest due upon the note was paid in full by the respondent to Canutt & Conn, when they surrendered the note to him. The note became lost before the trial of this action, so that we do not have it before us. However, no claim is made that it was other than an ordinary promissory note, nor that it contained any provisions suggesting in the least that its nonpayment at maturity would affect the continuing validity or force of the insurance under the policy and assignment of insurance to respondent. The evidence warrants the conclusion that the receiving of such a note in settlement of the premium upon the policy and assignment of insurance made thereunder to respondent was customary with appellant. Indeed, the printed form of the note here involved was furnished by appellant to its agents, Canutt & Conn, for this purpose.

Counsel for appellant invokes the doctrine of a line of decisions dealing with forfeiture provisions in policies expressly providing, in substance, that if a note be given in payment of premium and remain unpaid at maturity, the insurance thereupon ceases to be effective, as in *Iles v. Mutual Reserve Life Ins. Co.*, 50 Wash. 49, 96 Pac. 522, 126 Am. St. 886, 18 L. R. A. (N. S.) 902, and *Iowa Life Ins. Co. v. Lewis*, 187 U. S. 335; or dealing with cases where similar forfeiture provisions are found in the terms of the note itself, as in *Reed v. Bankers' Reserve Life Ins. Co.*, 192 Fed. 408; or dealing with cases where similar forfeiture provisions are

found in the terms of orders given upon third parties for the
payment of premium installments falling due in the future,
as in *Gilmore v. Continental Casualty Co.*, 58 Wash. 203, 108
Pac. 447; and *Pride v. Continental Casualty Co.*, 69 Wash.
428, 125 Pac. 787.

The doctrine of these decisions, and others involving simi-
lar forfeiture provisions to which our attention has been
called by counsel for appellant, we think has no application
to the facts of this case. While by the terms of this policy
the rights of the insured are subject to forfeiture "when the
insured is delinquent on any premium payment due on this
policy," there is nothing in the policy, or the assignment of
insurance made thereunder to respondent, preventing the pay-
ment of the premium by an interest bearing promissory note;
nor is there anything in the policy, the assignment of insur-
ance made to respondent or in the note itself, rendering the
insurance ineffective by failure of respondent to pay the note
at maturity. In *Arkansas Ins. Co. v. Cox*, 21 Okl. 873, 98
Pac. 552, 129 Am. St. 808, 20 L. R. A. (N. S.) 775, 783,
the court had under consideration a situation like that here
involved, and in disposing of the contention that the insurance
had ceased to be effective because of the failure of the assured
to pay the promissory notes at maturity given in settlement
of the premium, said:

"Plaintiff executed two promissory notes in payment of
the premium on the policy. These notes were past due and
unpaid at the time of the institution of this suit, and defend-
ant contends for forfeiture of the policy for the nonpayment
of said notes, but neither the notes nor the policy make the
validity of the policy contingent upon the payment of the
notes. These notes were given by plaintiff and accepted by
defendant in payment of the premium just as so much cash,
and plaintiff is liable thereon for the amount of the same.
Plaintiff in fact has tendered payment of the same to the
company, which was refused. In the absence of stipulation
in the note or in the policy of insurance that failure to pay
the notes given in payment of the premium should operate
as a forfeiture of the policy or a suspension of the risk, the

policy will continue in force after the maturity of the notes although the same are not paid. Joyce on Insurance, vol. 2, § 1212."

In view of the recital in the certificate of assignment of the insurance to respondent, which is in effect an acknowledgment of the receipt of the premium in full, the delivery of the assignment to respondent, the acceptance of the promissory note containing no provision looking to termination of the insurance upon a failure to pay the note at maturity, and the absence of any such provision in the policy or certificate of assignment, we are of the opinion that the note was accepted as cash in full payment of the premium and that, therefore, its nonpayment at maturity had no effect whatever upon the insurance. The following decisions support this view. *Massachusetts Benefit Life Ass'n v. Robinson*, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261; *New England Mut. Life Ins. Co. v. Hasbrook's Adm'r*, 32 Ind. 447; *Michigan Mut. Life Ins. Co. v. Bowes*, 42 Mich. 19, 51 N. W. 962; *McAllister v. New England Mut. Life Ins. Co.*, 101 Mass. 558, 3 Am. Rep. 404; *Michigan Mut. Life Ins. Co. v. Hall*, 60 Ill. App. 159; *Life Ins. Co. of Virginia v. Hairston*, 108 Va. 832, 62 S. E. 1057, 128 Am. St. 989; 3 Cooley's Briefs on the Law of Insurance, p. 2267.

One of appellant's defenses set up in its answer was that respondent had himself procured the burning of the warehouse at Warner's Siding in which his wheat was stored. Testimony was received, over the objection of counsel for respondent, tending to show that near the time of the burning of this warehouse, there was discovered evidence of an attempt of an incendiary nature to burn the warehouse at Tekoa, a few miles distant from Warner's Siding, in which respondent had a quantity of wheat stored, which wheat he had fully insured. While this testimony shows quite convincingly that an attempt had been made to burn the Tekoa warehouse, it was not shown, at the time of the introduction of the testimony, that respondent had any connection there-

with.    The testimony was introduced over the objection of counsel for respondent upon the promise of counsel for appellant that respondent's connection with the burning of the warehouse at Tekoa would be shown later in the trial. Thereafter, the court being of the opinion that there was no substantial evidence pointing to respondent's connection therewith, the evidence relating to such attempted burning of the Tekoa warehouse was, upon motion of counsel for respondent, stricken and the jury instructed to disregard it. Some effort was also made to show that the respondent was indebted to the Tekoa State Bank, by asking the cashier of that bank, who was a witness for appellant, as follows:

"I will ask you to state what indebtedness Mr. Goddard, the plaintiff in this case, owed to your bank during the month of April, 1912?"

Objection made to this question by counsel for respondent was sustained by the court.    No other offer of evidence was made by counsel for appellant with a view of showing respondent's financial condition.

It is contended by counsel for appellant that the trial court erred in excluding the evidence tending to show the attempted burning of the warehouse at Tekoa, and in sustaining the objection to the question above quoted touching respondent's indebtedness to the bank.    The real question here is, were these rulings prejudicial to the rights of appellant.    A review of the entire record convinces us that there was no substantial evidence pointing to the fact that the burning of the Warner's Siding warehouse was of an incendiary nature, other than such possible inference as might be drawn from the attempted burning of the Tekoa warehouse in which respondent had a quantity of insured wheat stored, and the fact, which we assume for present purposes, that respondent was indebted to the Tekoa State Bank.    With the evidence in this condition, we think the court should, in any event, have withdrawn from the jury the question of respondent's having procured the burning of the

warehouse at Warner's Siding in which his grain was stored. The court's rulings complained of simply had this effect. These facts might have been admissible in connection with other facts which might have tended to show that respondent procured the burning of the Warner's Siding warehouse, but they are not, in our opinion, of themselves sufficient to sustain appellant's defense made upon that ground. We conclude that these rulings of the trial court were therefore without prejudice, even though the rejected evidence might have been admissible.

Contention is made in behalf of appellant that the verdict is excessive in amount and must be so held as a matter of law, in the light of the evidence touching the question of salvage and the proceeds thereof. This is one of the grounds upon which appellant's motion for new trial was made. It is plain that the jury awarded to respondent the full market value of all of his wheat in the warehouse, as though he had suffered a total loss of all of his wheat. The evidence is conclusive, indeed it is not contended otherwise, to the effect that the owner of the warehouse sold wheat which had been damaged by the fire, amounting to over three thousand bushels thereof, receiving therefor $1,261.95. At the time of the fire, nearly all of the wheat in the warehouse belonged to respondent. It is impossible that the owner of the warehouse could have sold the quantity of damaged wheat it did without the larger portion of such damaged wheat being that of respondent. Indeed, a large portion of it was considered as belonging to respondent by the owner of the warehouse, since it gave respondent credit for at least several hundred dollars of the proceeds of such sales, though the total credit so given is not very certain. The sale of the damaged wheat was made by the owner of the warehouse with the express consent of respondent. We are of the opinion that appellant is entitled to have deducted from the total market value of the respondent's wheat, which was manifestly the basis of the jury's award, at least a large portion of the proceeds

received by the owner of the warehouse for the sales of the damaged wheat. The verdict is plainly excessive in a substantial amount. While it is not clear as to just what amount should be deducted from the verdict because of this excess, we are of the opinion that it is such as calls for a new trial, unless respondent shall remit from the amount of the verdict and judgment a portion thereof. We conclude that if respondent will, upon the going down of the remittitur, remit from the amount of the judgment the sum of $800, the judgment may stand affirmed; otherwise appellant shall be granted a new trial by the superior court. Appellant will recover costs in this court. The cause is remanded to the superior court for such further proceedings as may be necessary, consistent with our conclusions herein stated.

MORRIS, C. J., HOLCOMB, CHADWICK, and MOUNT, JJ., concur.