# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

MUTUAL INSURANCE COMPANY OF RICHMOND AND PEOPLE'S
LIFE INSURANCE COMPANY OF WASHINGTON V.
SARAH CATHERINE MARSHALL.

November 12, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Gregory, JJ.

The opinion states the case.

*Denny & Valentine, David J. Wood* and *T. M. Boyd,* for the plaintiffs in error.

*Gilmer & Graves* and *L. W. Graves, Jr.,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

Two actions by notice of motion were brought by Sarah Catherine Marshall, beneficiary named in two policies of insurance issued to her husband, Robert E. Marshall, to recover of the plaintiffs in error, the Mutual Insurance Company of Richmond and People's Life Insurance Company of Washington, D. C., the sums of $500.00 each, respectively.

The policy issued to Robert E. Marshall by the Mutual Insurance Company contained this pertinent clause: "Nor will any claim be paid within one year from date of issue hereof, for suicide, whether the insured is sane or insane."

The policy issued by the People's Life Insurance Company

contains this clause: "If the death of the insured be caused by his or her own hand, whether sane or insane * * * the liability of the company is limited to a return of the premiums paid upon this policy."

The defense interposed by defendants rested upon the ground that the insured, Robert E. Marshall, on the 6th day of June, 1930, committed suicide by intentionally drinking a lethal solution of carbolic acid known to medical science as a deadly poison.

By agreement of counsel, the cases were tried jointly, and resulted in verdicts for the plaintiff for the full amount claimed under the policies of insurance. Defendants' motions to set aside the verdicts on the ground that same were contrary to and not supported by the evidence were overruled by the trial court and judgments were entered accordingly. That action of the court is assigned as error.

This court, in line with the great weight of authority as evinced in the Federal and State decisions, has laid down the rule that when the defense of suicide is relied upon to defeat a recovery under a policy of insurance, the burden is upon the insurer to establish such a defense by clear and satisfactory proof. In the opinion of the court, delivered by Judge Keith, in *Life Ins. Co. of Va.* v. *Hairston*, 108 Va. 852, 62 S. E. 1057, 1066, 128 Am. St. Rep. 989, the doctrine is thus stated:

"As was said by this court in *Va. Fire & Marine Ins. Co.* v. *Hogue* [105 Va. 355, 54 S. E. 8], *supra*, the burden of proof to establish such a defense is upon the defendant, and he must make it out by clear and satisfactory proof— not proof beyond a reasonable doubt, nor a preponderance in the ordinary sense, but such a preponderance as is necessary to overcome the presumption of innocence of moral turpitude or crime.

"But, on the other hand, it does not require that degree of proof which is necessary to convict in a criminal prosecu-

tion, where it is proper to instruct the jury that they should acquit, unless the evidence is sufficient to establish guilt beyond a reasonable doubt. As applied to the proof of fraud or of suicide, the preponderance of the evidence should be such as to overcome the presumption of innocence of moral turpitude or crime; and, if upon a consideration of all the evidence relating to any fact, the jury should be of opinion that the greater probability from all the evidence is in favor of the existence of that particular fact, then they must so find, and the result of the facts thus ascertained must be such as to overcome the presumption of innocence of moral turpitude or crime."

■ The rule is consonant with reason and justice, for "so strong is the instinctive love of life in the human breast, and so uniform the efforts of men to preserve their existence, that suicide cannot be presumed." *Travelers' Insurance Co.* v. *McConkey*, 127 U. S. 661, 8 S. Ct. 1360, 1361, 32 L. Ed. 308.

■ It follows, therefore, that the plaintiff is entitled to recover, unless the defendants have adduced satisfactory proof—not beyond a reasonable doubt, nor by "a preponderance in the ordinary sense"—but such proof as will "overcome the presumption of innocence of moral turpitude or crime."

How, then, stands the case at bar as shown by the record?

■■ The facts adduced, from the standpoint of the plaintiffs in error, are as follows: Subsequent to the dates on which the policies were issued, the insured, Robert E. Marshall, was sent to the Western State Hospital for the insane on account of severe spells of depression, brought on by excessive drinking of intoxicating liquor; prior to his incarceration in the hospital he had an attack of delirium tremens and had at one time taken supposedly poisonous tablets; at the time of his death he was on parole from the hospital; he was a man of moderate means and out of

employment at the time of his death; on the afternoon of his death he purchased a small bottle of carbolic acid at Borden's Drug Store; his brother, Tom Marshall, when informed by Mrs. Marshall that his brother was not at home, left the supper table and went in search of him; he found him in the "Wine Cellar Field" near Charlottesville; there were several other occupants of the "Wine Cellar Field" who had been indulging in a drink called "keenis;" when deceased was first observed by his brother Tom, he was drinking from a bottle; "the stuff commenced burning him;" he threw the bottle away and said, "what did I drink? I don't want to die and leave my little boy;" the bottle thrown away by deceased was picked up by Tom; it was a "bottle of carbolic acid," * * * "smelled kind of funny;" the bottle was delivered by Tom to the coroner, its remaining contents were examined by Dr. L. F. Small, research chemist at the University of Virginia, and it was found to contain "a yellow oily substance, ninety six per cent carbolic acid and four per cent water;" no post mortem examination was held, but deceased "had some little blisters on one side of his mouth and some on his chin;" he died immediately after he was seen by Tom to drink from the bottle; Tom Marshall called to Stuart Clark as his brother was falling to the ground: "Come here, Clark; Bob has took some poison."

In rebuttal, plaintiff testified, and also introduced a number of witnesses who testified that deceased was happy in his home life; that he had not been drinking to excess immediately prior to his death and that he had given no intimation that he was mentally depressed.

The most material conflict in the evidence relates to the time of the purchase of carbolic acid at Borden's Drug Store. Dr. Borden testified that he sold some one carbolic acid on June 6, 1930 (the date of Marshall's death), but was unable to identify the purchaser, and fixed the time as

between 3:00 and 3:30 o'clock in the afternoon. Lindsay Jarman, a clerk in the store, identified Marshall from a photograph shown him as the purchaser of the carbolic acid, but fixed the time of the purchase at about 6:30 P. M., a period of time after Dr. Borden testified he had left the store. Jarman was corroborated by Harold Moore, a customer in the store who identified Marshall by the photograph.

The discrepancy in time is not, in our opinion, of material value. The fact remains, as shown by the record, that only one sale of carbolic acid was made by Dr. Borden on the afternoon of June 6th. It is a matter of common knowledge that the sale of carbolic acid is not a startling occurrence. It is frequently sold as a disinfectant and no restrictions are thrown around its purchase. It is, therefore, but natural that the time of purchase was not impressed upon the minds of the witnesses, but the fact of purchase, followed by the information that a person has committed suicide, is of the highest importance.

To sustain her contention that defendants have not carried the burden of showing that Robert E. Marshall intentionally drank carbolic acid with suicidal intent, the following cases are relied upon: *Cosmopolitan Life Ins. Co.* v. *Koegel*, 104 Va. 619, 52 S. E. 166; *Life Ins. Co. of Virginia* v. *Hairston*, 108 Va. 832, 62 S. E. 1057, 128 Am. St. Rep. 989; *Metropolitan Life Ins. Co.* v. *De Vault's Adm'x*, 109 Va. 392, 63 S. E. 982, 17 Ann. Cas. 27; *South Atlantic Life Ins. Co.* v. *Hurt's Adm'x*, 115 Va. 398, 79 S. E. 401.

While we approve of the general doctrine stated in the above authorities, when dealing with a case where the defense rests upon circumstantial evidence, we do not think they are applicable to the case at bar. In each of the cases referred to, the evidence relied on to prove the suicide of the insured was purely circumstantial, and the defense failed for the reason that on the question of the overt act the proof did not exclude "with reasonable certainty any hypothesis

of death by accident." In this case the evidence of Tom Marshall, an eye witness to the overt act, concludes the question as to the manner of the death of Robert E. Marshall. On that score we have no doubt. The question then arises: Was the act committed with suicidal intent? The only scintilla of evidence tending to show that the drinking of the deadly poison was accidental is the dying expression of Marshall: "What did I drink? I don't want to die and leave my little boy." If the evidence had shown that Marshall had previously been drinking the concoction of water and denatured alcohol known as "keenis" there might arise the supposition that the fatal fluid was imbibed accidentally. While there is abundant evidence that the other occupants of the "Wine Cellar Field" had partaken freely of "keenis," there is no evidence that Marshall did so. Mrs. Marshall testified that he had not been drinking on the fateful day. This court will take judicial notice of the fact that carbolic acid has a strong, pungent odor, and produces excruciating pain when applied externally or taken internally. It is inconceivable, therefore, that one could consume nearly two ounces of the acid by accident.

In spite of the weight this court has, in numerous decisions, attached to the verdict of a jury on a question of fact, where conflict in the evidence is debatable, we are not called upon in this case to accept as a fact that which is contrary to natural laws.

The judgment will be reversed, the verdict will be set aside and this court will enter final judgment in favor of the plaintiffs in error.

*Reversed.*