# Richmond.

Cosmopolitan Life Insurance Co. v. Koegel.

November 23, 1905.

1. Life Insurance—*What Constitutes—Code, Sec. 3251.*—A contract by which a benefit society agrees to pay a certain sum of money, on the death of a member, in consideration of the payment by the member of fixed sums at fixed periods, by whatever name called, is a life insurance policy within the meaning of Code (1904), Sec. 3251, permitting a complaint to be filed instead of a declaration in a formal action at law, and is not a mere certificate of membership in a benefit society within the purview of Acts, 1897-'8, p. 734.

2. Life Insurance—*Re-insurance—Action by Policy Holder—Privity.*—Where one company, for value, contracts to pay all losses sustained or to be sustained by another by reason of policies issued by the latter, the holder of a policy issued by the latter, may sue on the policy issued to him and recover from the first mentioned company damages for the breach. The law creates the duty and supplies the needed consideration wherever one party has money or property in his hands which in equity and good conscience belongs to another.

3. Life Insurance—*Re-insurance—Code, Sec. 3251.*—Where one company, for value, contracts specifically to pay a loss sustained by another under a policy of insurance issued by it, the policy becomes the contract of the first mentioned company, and the measure of its liability to the policy holder, and section 3251 of the Code premitting a complaint instead of a declaration to be filed is applicable to an action on it.

4. Insurance—*Code, Sec. 3251 and 3252 Applicable to Procedure.*—Sections 3251 and 3252 of the Code relating to actions on insurance policies are no part of the Insurance laws of this State within meaning of the act relating to benefit societies (Acts, 1897-'8, ch. 688), but simply relate to modes of procedure in a certain class of actions.

5. PLEADING—*Declaration—What Sufficient:*—A declaration is sufficient which contains sufficient matter to enable the plaintiff to prove his case and so apprises the defendant of that case as to enable him to make defense.

6. LIFE INSURANCE—*Suicide—Proof Required.*—The defense of suicide, to avail, must exclude every hypothesis of accidental death. The party making the defense has the burden of proof. It will not be presumed. The mere fact that the body of an insured is found with a pistol in his hand and a bullet wound in his head is not sufficient to prove suicide.

Error to a judgment of the Circuit Court of Roanoke county on a complaint. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Archer A. Phlegar,* for the plaintiff in error.

*Smith & King,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

On the 12th day of October, 1897, the Royal Tribe of Joseph, calling itself a fraternal mutual benefit society, incorporated by the laws of Missouri, issued a certificate of membership to John Jacob Koegel, which provided that upon satisfactory proof of his death and surrender of the certificate two thousand dollars would be paid to Louie M. Koegel, his wife, out of the "Ideal" Division of the Mortuary Fund of the Royal Tribe of Joseph, upon condition that the laws of the society relating to such certificate were complied with, and that it was issued and accepted upon the terms and conditions of the laws of the society then in force, or which might thereafter be adopted.

John Jacob Koegel died August 29, 1903, in the county of Roanoke, Virginia; from a wound inflicted by a pistol in his hand, whether intentionally or accidentally is unknown. Before and at the time of his death, section 233 of the laws of the

society was in force, and provided among other things, that "no benefit shall be payable on account of the death, accident or disability of any member by his own hands, whether sane or insane."

On the 17th of October, 1903, after the death of Koegel had been reported to the society, the Royal Tribe of Joseph and the Cosmopolitan Life Insurance Association, a corporation of Illinois, entered into a contract in writing "for consolidation of the two societies," as stated in the contract, whereby in consideration of the transfer to it of the assets of every kind, business and goodwill of the Royal Tribe of Joseph, the Cosmopolitan Life Insurance Association, among other things, assumed "all liabilities of the said Royal Tribe of Joseph on certificates of membership upon which death had been reported, and which were at the date of said contract unpaid;" and this assumpsit included the liability, if any, upon the certificate of Koegel. Thereafter the Cos. L. Ins. Co., in writing, specifically assumed the payment of certificate No. 7,216, issued by the Royal Tribe of Joseph on the life of Koegel, and contracted to carry out the provisions thereof in accordance with its terms, etc.

On the first Monday in March, 1904, Louie M. Koegel filed in the Circuit Court of Roanoke county a complaint in writing against the Cosmopolitan Life Insurance Association, such as is provided by section 3251 of the Code, as amended by the Acts of 1895-6, p. 707, and filed therewith the said certificate issued by the Royal Tribe of Joseph.

The said complaint sets out the foregoing facts and also avers that for a valuable consideration the Royal Tribe of Joseph issued the said certificate as an insurance policy on the life of John Jacob Koegel, by which the Royal Tribe of Joseph agreed to pay on the death of said John Jacob Koegel to the plaintiff, who was the wife of said John Jacob Koegel, the sum of two thousand dollars; that in consideration of the transfer to the defendant of the assets, business and property of

the Royal Tribe of Joseph, the defendant expressly agreed to pay and did assume to pay all liabilities which the said Royal Tribe Joseph, on its policies of insurance, was under to its policy holders, and especially assumed and agreed to pay the liability of the Royal Tribe of Joseph to the plaintiff under said policy No. 7,216; and that the plaintiff thereby became and is entitled to demand and recover of the defendant the sum of two thousand dollars, with interest thereon from the 29th day of August, 1903, which by the terms of said policy of insurance the said Royal Tribe of Joseph did agree to pay her, and which by the terms of the agreement and transfer aforesaid between said Royal Tribe of Joseph and the defendant, the defendant did agree to pay her. It further avers that the said John Jacob Koegel and that she, the plaintiff, have performed all the conditions of said policy and violated none of its prohibitions; yet, notwithstanding this, neither the Royal Tribe of Joseph nor the defendant has paid to the plaintiff the said sum of two thousand dollars and interest aforesaid, nor any part thereof; but on the contrary although requested so to do hath hitherto wholly refused to pay the said sum or any part thereof, and that therefore the plaintiff files this her complaint and prays that judgment may be entered against the defendant for the sum of two thousand dollars, with interest as aforesaid, etc.

To this complaint the defendant demurred, assigning as grounds of demurrer: (1) That the certificate filed with the complaint was not a policy of insurance within the meaning of sections 3251 and 3252 of the Code; and (2) That the assumption by the defendant of the liabilities of the Royal Tribe of Joseph did not give a right of action against the defendant under section 3251, but it could only be sued on its undertaking to pay the debt of the Royal Tribe of Joseph, if it was indebted to the plaintiff.

The demurrer was overruled, and thereupon the defendant tendered three pleas, which, on motion of the plaintiff, were re-

jected; and thereupon the defendant pleaded *non assumpsit* and filed with its plea a statement of its grounds of defense, the third of which was the same matter in different form as was alleged in one of the pleas rejected, and on motion of plain-tiff this ground of defense was stricken out. The defendant then filed two other pleas, issue was joined on these pleas and the plea of non assumpsit, and a trial resulted in a verdict and judgment against the defendant for two thousand dollars, with interest as claimed in the complaint.

We are asked to review and reverse this judgment on the grounds: (1) That the court erred in overruling the demurrer to the complaint; (2) The rejection of pleas Nos. 1 and 2; and (3) Because of the refusal of the court to set aside the verdict and grant a new trial as being contrary to the law and the evidence.

All that need be said as to pleas Nos. 1 and 2, rejected, is that they raise the same questions presented by the demurrer to the complaint or declaration, viz: (1) Does section 3251 of the Code apply to suits on certificates of membership such as was filed in this case; and (2) whether, if the certificate is a policy of insurance, the defendant could be sued thereon as it was no party thereto?

Was the certificate filed with the complaint or declaration a policy of assurance, such as is contemplated by section 3251 of the Code, as amended, is the first question to be considered.

In *Logan* v. *Fid. & Cas. Co.,* 146 Mo. 114, 47 S. W. 948, the opinion says: "The calling of a contract of insurance by any other name that may be adopted for business or conventional uses cannot make an agreement to pay to another a sum of money designated, upon the happening of an unknown or contingent event depending upon the existence of life, less a policy of insurance on life." See also *Toomey* v. *Sup. L. K. of P.,* 147 Mo. 129, 48 S. W. 936; *Aloe* v. *Fid. Mut. L. Asso.,* 164 Mo. 675, 55 S. W. 993.

In *Goodman* v. *Jed. Lodge, &c.,* 67 Md. 117, 9 Atl. 13, 13

Atl. 627, it is said: "If a company organized for social pur-
poses chooses to go into the insurance business, they must ex-
pect courts to deal with and adjudicate the rights of the policy
holders upon the same principles they apply in the usual cases
of life insurance."

"In some societies, the certificate issued by the supreme
authority is to pay a certain amount to a designated beneficiary
upon the death of a member. Where this is the case the certi-
ficate is in legal effect a policy of life insurance, governed by
the rules of pleading applicable to ordinary actions on policies."
*Elkhart M. B. & A. Asso.* v. *Houghton,* 103 Ind. 286, 2 N. E.
763, 53 Am. Rep. 516.

After reviewing a great number of decisions distinguishing
benefit societies from life insurance companies, Bacon, in his
work on Ben. Soc. & L. Ins. sec. 52, vol. 1, says: "It follows
from the foregoing adjudications that all benefit societies,
whether corporations or mere voluntary associations, are strictly
speaking insurance organizations whenever in consideration of
periodical contributions they engage to pay the member, or his
designated beneficiary, a benefit upon the happening of a speci-
fied contingency. Although they may also partake of the nature
of clubs or fraternal societies, and although they are often tech-
nically not called insurance companies, we must admit that,
whether the benefit be paid for sickness, or to provide burial,
or to accumulate a fund out of which payments are to be made
to beneficiaries of deceased members, the contract falls within
the definition of an insurance contract, viz: 'An agreement by
which one party for a consideration (which is usually paid in
money, either in one sum, or at different times during the con-
tinuance of the risk), promises to make a certain payment
of money upon the destruction or injury of something in which
the other party has an interest.' It may also be asserted as a
general principle that wherever or whenever a benefit society,
paying a benefit to the beneficiaries of its deceased members,
claims to be exempt from the operation of certain laws ap-

plicable to persons or companies doing a life insurance business, it can only safely base such claim upon express provisions of its charter, or of the statutes exempting similar organizations from such liability. The association may be benevolent and charitable, and only incidentally provide benefits for its members or their beneficiaries, but nevertheless, when it contracts to pay a certain sum to the appointees of its members upon their decease, while in good standing, in consideration of certain contributions made by such members while living, it is doing a life insurance business. We shall find, as we proceed further to discuss the questions concerning the contracts and liabilities of benefit societies, that many of the principles of the law of life insurance are applied to these societies because they are in some respects simply life insurance companies doing business on a plan only partially different from that of regular life insurance organizations." See also *Commonwealth* v. *Wetherbee,* 105 Mass. 195; *Bank of Washington* v. *Hume,* 128 U. S. 195, 32 L. Ed. 375, 9 Sup. Ct. 41.

The rule sanctioned by the foregoing authorities in defining what is a life insurance policy and not a mere certificate of membership in a purely benevolent society, is, that a contract by which a company or association agrees to pay a certain sum of money on the death of a member, in consideration of the payment by the member of fixed sums at fixed periods, is a life insurance policy, by whatever name it may be called; and measured by this rule the certificate filed with the complaint in this cause is clearly a policy of insurance within the meaning of section 3251 of the Code, as amended, and not merely a certificate of membership in a benevolent society or beneficial association within the purview of chap. 688 of the Acts of 1897-8, p. 734.

With reference to the second ground of demurrer, while the defendant was not a party to the contract between the Royal Tribe of Joseph and John Jacob Koegel, as evidenced by the certificate filed with the complaint or declaration in this

case, the complaint or declaration sets out the contract between the defendant and the Royal Tribe of Joseph of October 17, 1903, whereby the defendant specifically and definitely agreed in writing, for a certain consideration, to assume all liability of the Royal Tribe of Joseph on its certificates of membership upon which death had been reported and were unpaid at that date; and further avers, as we have seen, that the defendant thereafter in writing specifically assumed payment of the said certificate issued to John Jacob Koegel and contracted to carry out the provisions thereof in accordance with its terms, etc.

In *Johannes* v. *Phoenix Ins. Co.* (Wis.), 27 N. W. 414, 57 Am. Rep. 249, A was insured in the Standard Fire Ins. Co. of London, and that company, desiring to withdraw from business in the United States, sold and turned over to the Phoenix Ins. Co. its entire business and the good will of that business in the United States, together with a large amount in bonds and other property; in consideration of which the Phoenix Company re-insured all the risks of the Standard Company upon the property situated in the United States, and agreed that all losses arising under the policies of the Standard Company on such property after the date of the contract should be borne and paid and satisfied by the Phoenix Company, and the Supreme Court of Wisconsin held, that A might maintain an action against the Phoenix Company to recover a loss on the property covered by his policy in the Standard Company. That was a fire insurance policy, but upon a review of a number of authorities cited the conclusion is reached that the principle applies as well in cases when the contract is an insurance of property as where it is an insurance of life.

Among the cases cited in the opinion in that case, is *Glen* v. *Hope Mut. L. Ins. Co.*, 56 N. Y. 379, where the defendant had agreed with the Craftsmen's Assurance Company to re-insure the latter company on all its risks "for which policies of the said party of the second part (Craftsmen's Assurance Co.) are outstanding at this date, and hereby agree to issue all such

policies and to pay the holders thereof all such sums as the party of the second part may, by force of such policies, become liable to pay . . . the liability for death losses to be limited to such deaths as may occur on and after this date." It was held that the defendant was liable on the contract of re-insurance directly to the several holders of the policies for the whole amount insured thereby, and the action in that case was on the policies and not on the contract of re-insurance. In that case, also, the death of the insured occurred after the re-insurance, while in the case under consideration it occurred prior to the contract entered into by the defendant assuming to pay the claim originally against the Royal Tribe of Joseph, based on the certificate of membership which the deceased held at the time of his death. The opinion says, that on the death of the insured the Craftsmen's Company became liable to pay all its three policies, and the defendant, the *Hope Mut. L. Ins. Co.,* by reason of its agreement, also became liable for the same amount to the plaintiffs who had made demand upon the defendant therefor, and that on the facts of the case it was the settled law that the plaintiffs might maintain their action against the defendant on the three policies which by its agreement it had assumed.

The contract of October 17, 1903, was but a re-insurance directly to the several holders of the policies or certificates of membership in the Royal Tribe of Joseph, and specifically a contract of re-insurance directly to the beneficiary of the holder of the policy held by John Jacob Koegel and sued on in this cause, and we are of opinion that the said policy or certificate became the contract of the defendant and the measure of its liability to the plaintiff the moment it signed the agreement of October 17, 1903, and that, therefore, section 3251 of the Code is applicable to a suit on that certificate or policy.

But it is argued on behalf of the defendant, that by reason of the provisions of chap. 688, Acts, 1897-8, which defines and regulates fraternal beneficiary associations, orders or societies,

section 3251 does not apply, as the first section of that act provides that such orders or associations shall be governed by this act and shall be exempt from the provisions of the insurance laws of this State, and that the Royal Tribe of Joseph was a fraternal beneficiary association within the provisions of the act.

We think that the contention is not well founded, as the definition of fraternal beneficiary associations excludes from the operation of the act associations of the class to which the Royal Tribe of Joseph belonged, it having been an association doing a life insurance business and not a purely fraternal beneficiary association within the definition of the act. Furthermore, sections 3251 and 3252 are no part of the insurance laws of Virginia, referred to in that act, but simply relate to the form of declarations and defenses in a certain class of actions. *Morotock Ins. Co.* v. *Pankey,* 91 Va. 259, 21 S. E. 487. The said act does not in terms repeal sections 3251 and 3252, nor are the two acts inconsistent. It was without doubt the object of the Legislature, in enacting sections 3251 and 3252 of the Code, to meet cases where insurance companies sought to escape liability upon technicalities in pleading.

But whether this action is founded upon the original policy of insurance issued by the Royal Tribe of Joseph to John Jacob Koegel or not, we are of opinion that the demurrer to the so-called complaint filed by the plaintiff was properly overruled, as the complaint contains every essential averment of a declaration in assumpsit. It sets forth the undertaking of the defendant to pay the policy No. 7,216 on the life of John Jacob Koegel, his death, the consideration for the undertaking of the defendant, and the breach or failure to pay, and demands the amount of the policy.

In *Austin* v. *Richardson,* 3 Call, 2 Am. Dec. 543, 205, the opinion says: "As he (defendant) had entered into an express undertaking, if he failed to perform it, the general allegation of the demand and refusal was sufficient."

"The test of the sufficiency of a declaration is to inquire

whether it contains sufficient matter for the plaintiff to state and prove his case under it, and to afford defense to another suit brought for the same cause of action." 1 Barton's Law Pr., 296; *Roanoke National Bank* v. *Hambrick,* 82 Va. 135.

Section 3246 of the Code provides: "No action shall abate for want of form, where the declaration sets forth sufficient matter of substance for the court to proceed upon the merits of the cause."

And section 3272 is as follows: "On a demurrer (unless it be to a plea in abatement), the court shall not regard any defect or imperfection in the declaration or pleadings, whether it has been heretofore deemed mispleading or insufficient pleading or not, unless there be omitted something so essential to the action or defense, that judgment, according to law and the very right of the cause, cannot be given."

The Royal Tribe of Joseph promised and agreed to pay to the plaintiff two thousand dollars on the death of her husband. Her husband died August 29, 1903, and the debt then became due and payable. Subsequently, on October 17, 1903, as the complaint or declaration avers, the defendant promised and agreed, in consideration of the assets of the Royal Tribe of Joseph turned over to it, to pay, among others, this debt; and, further, at a subsequent date, specifically promised and agreed to pay this debt due to the plaintiff, evidenced by the certificate No. 7,216 of the Royal Tribe of Joseph.

But the defendant insists that as the plaintiff is a stranger to the consideration for which that promise and agreement was made, she cannot maintain this action, and that it could be maintained by the Royal Tribe of Joseph alone—this upon the theory that there must be a privity between the plaintiff and defendant in order to render the defendant liable to an action by the plaintiff on the contract. This is undoubtedly the general rule; but it has its exceptions like many other general rules.

That rule, as stated by Metcalf, J., in *Mellen* v. *Whipple,*

1 Gray 321, and *Ross* v. *Milne,* 12 Leigh. 204, 37 Am. Dec. 646, and many other cases which need not be referred to, was recognized with express approbation by Mr. Justice Gray in *Carr* v. *National Security Bank,* 107 Mass. 45, 9 Am. Rep. 6, and in *Exchange Bank of St. Louis* v. *Wright,* 107 Mass. 41; 9 Am. Rep. 1; but he also carefully considers the exceptions to the rule, and they were regarded to be as firmly established as the rule itself.  The principal exception referred to consists of those cases in which the defendant has in his hands money which in equity and good conscience belongs to the plaintiff, as where one person receives from another money or property as a fund from which certain creditors of the depositor are to be paid, and promises, by his acceptance of the money or property without objection to the terms on which it is delivered to him, to pay such creditors.  See note to 1 Chitty on Pl., p. 5, where a number of cases are cited as belonging to a class in which it is said, "the law (in such cases) creates the privity and implies the promise."

In a lengthy note by Hare & Wallace, in 2 Am. Leading Cas., the authors, dealing with the rule of which we are speaking and the exceptions thereto, and citing a number of cases as authority for the conclusion they reach, say, at p. 182: "The authorities as a whole would seem to indicate, that when the intention of the parties is to confer a right of action on a third person who will be injured by the breach, the law will imply a promise in his favor, if the loss will fall primarily and exclusively on him, and the circumstances are such that a judgment in assumpsit will cover the whole ground and be adequate to the ends of justice."

Among the cases there reviewed as laying down the rule that privity is not essential in action *ex contractu,* is *Brewer* v. *Dyer,* 7 Cush. (Mass.) 339, where it is said by Bigelow, J.: "It is well settled in this Commonwealth that when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter,

who would enjoy the benefit of the act, may maintain an action for the breach of such engagement. *Felton* v. *Dickinson,* 10 Mass. 287; *Hall* v. *Marston,* 17 Mass. 575; *Arnold* v. *Lyman,* Id. 400, 9 Am. Dec. 154; *Carnegie* v. *Morrison,* 2 Met. 382. In the latter case all the authorities are fully reviewed in the opinion of the court, and the rule of law clearly vindicated and established. It does not rest upon the ground of actual or supposed relationship between the parties, as some of the early cases would seem to indicate (*Dalton* v. *Poole,* 1 Vent. 218; 2 Walford on Parties, 1144) nor upon the reason that the defendant by entering into such an agreement has impliedly made himself an agent of the plaintiff . . . ; but upon the broader and more satisfactory basis, that the law operating on the acting parties creates the duty, establishes the privity and implies the promise and obligation on which the action is founded."

In *Hall* v. *Marston, supra,* Parker, C. J., states, that "it seems to have been well settled, heretofore, that if A promises B, for a valuable consideration, to pay to C, the latter may maintain assumpsit for the money;" and further says: "The principle of this doctrine is reasonable, and consistent with the character of the action of assumpsit for money had and received."

In *Dearborn* v. *Parks,* 17 Am. Dec. 206, it was held, that if one person, for a valuable consideration, makes a promise to another for the benefit of a third, the latter may maintain an action upon it, the opinion saying, that in cases of this description, although the promisor undertakes to pay the debt of another, yet he thereby pays his own debt, and that constitutes the operative mode and inducement by which he is actuated. To him it must be a matter of indifference whether he pays directly to his creditor or to his assignee. He pays no more, and he can be holden to pay but once.

The principle applied in the authorities just referred to is

but analogous to that often applied by this court in that class of cases to which *Langhorne* v. *McGhee,* 103 Va. 281, 49 S. E. 44, and the cases there cited belong, viz.: "Wherever one person has in his hands money equitably belonging to another, that other person may recover it by assumpsit for money had and received."

Says the opinion by Keith, P., in *B. & O. R. Co.* v. *Burke & Herbert,* cited in *Langhorne* v. *McGhee, supra*: "When the fact is found that the defendant has the plaintiff's money, and he can show neither legal nor equitable grounds for keeping it, the law creates the privity necessary to support an action on the part of the plaintiff to recover it." See also *Gaines* v. *Miller,* 111 U. S. 395, 28 L. Ed. 466.

In the one class of cases the principle is applied where it is money that the defendant has which equitably belongs to the plaintiff, and in the other where the defendant has either money or property in consideration of which he has promised to pay the debt due the plaintiff by his debtor, from whom the defendant acquired such money or property and to who the promise was made, and in either case the law creates the privity and implies the promise necessary to support an action on the part of the plaintiff to recover his debt of the defendant.

The principle and reasoning applied in both apply with equal force to the case at bar.

A number of decisions by the appellate courts of the State of New York, in harmony with the decisions of the Supreme Court of Massachusetts which we have cited, might also be cited, but we deem it unnecessary to do so.

It follows that the plaintiff is entitled to recover in this action, unless the defendant is relieved from liability for the debt sued for by the breach of some condition upon which it entered into the contract of October 17, 1903, with the Royal Tribe of Joseph, and the only breach relied on is that clause of the by-laws of the Royal Tribe of Joseph which we have

quoted above, the effect of which was to relieve the Royal Tribe of Joseph and the defendant from the payment of the amount due to the plaintiff if John Jacob Koegel met with his death by suicide.

This brings us to the consideration of the last assignment of error, which is to the refusal of the Circuit Court to set aside the verdict of the jury on the ground that it is contrary to the evidence, the suicide of Koegel being the only defense relied on, on the merits of the case.

It is not denied that the burden of proving the defense of suicide was on the defendant, and the law is well settled, that "where the evidence of self-destruction is circumstantial, the defendant fails unless the circumstances exclude with reasonable certainty any hypothesis of death by accident or by the act of another." *Leman* v. *Man. of Life Ins. Co.* (La.), 15 South. 388, 49 Am. St. Rep. 348, 24 L. R. A. 589; *Cox* v. *Royal Tribe of Jos.* (Or.), 71 Pac. 73, 60 L. R. A. 620, 95 Am. St. Rep. 752.

"The mere fact of the body of the insured being found with a pistol in his hand and a bullet wound in his head is not sufficient to prove suicide." *Union Mut. L. Ins.* v. *Payne,* 45 C. C. A. 193, 105 Fed. 172.

"The defense of suicide, to avail, must show that every hypothesis of accidental death is excluded by the evidence." *Boynton* v. *Equitable L. A. Co.* (La.), 29 South. 490, 52 L. R. A. 687; *Brown* v. *Sun L. I. Co.* (Tenn. Ch. App.), 47 S. W. 415, 51 L. R. A. 252.

In *Standard L. I. Co.* v. *Thornton,* 100 Fed. 582, 40 C. C. A. 564, 49 L. R. A. 116, it is said: "Accidental death will be presumed, and this presumption must be overcome by the proof of facts which exclude every hypothesis of death except by suicide."

And in *Mut. L. I. Co.* v. *Wiswell* (Kan.), 44 Pac. 906, 35 L. R. A. 258: "Where the evidence as to whether the death was accidental or suicidal leaves the question in doubt, the presumption is in favor of accident."

To the same effect is 2 Bac. Ben. Soc., p. 849, where it is said, that "the presumption of law is that where a dead body is found and there is no direct evidence as to the cause of death, that death was not by suicide."

We only deem it necessary to say, with reference to the evidence, that it does not show a single circumstance connected with or surrounding the death of John Jacob Koegel that is not as consistent with accident as with suicide; and therefore it is clearly a case in which this court would not be warranted in disturbing the verdict of the jury.

Upon the whole case, we are of opinion to affirm the judgment of the Circuit Court.

*Affirmed.*