## PARRISH v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA.

(Circuit Court of Appeals, Fourth Circuit.    February 2, 1916.)

No. 1382.

1. INSURANCE ⟪789(1)—ACCIDENT INSURANCE—NOTICE OF LOSS.

Where the constitution of an order fixed its liability for bodily injury effected through accidental means which occasioned death immediately or within six months from the happening thereof, and provided that in the event of. death resulting from accidental means, as thereinbefore provided, notice of·the accident must be given, and in addition notice of the death within 10 days after the death, notice was required to be given in case of death resulting immediately from the injury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1963, 1964; Dec. Dig. ⟪789(1).]

2. INSURANCE ⟪789(1)—ACCIDENT INSURANCE—NOTICE OF LOSS—IMPOSSIBIL-ITY.

The fact that it might be impossible, in some cases of immediate death from accident, to give the notice of loss required by the constitution of the order does not excuse failure to give it when it was possible.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1963, 1964; Dec. Dig. ⟪789(1).]

3. APPEAL AND ERROR ⟪1067—ERROR FAVORABLE—REFUSAL TO DIRECT VER-DICT.

Where the facts from which the jury were told they should infer waiver of notice of death were not disputed, or were established by uncontroverted testimony, the jury must have found that the order waived the require-ments for notice, and the plaintiff cannot complain of the failure to give a direct instruction that defendant had waived the requirement.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. ⟪1067; Trial, Cent. Dig. § 475.]

4. INSURANCE ⟪825(3)—ACCIDENT INSURANCE—SUFFICIENCY OF EVIDENCE—SUICIDE.

In an action on a benefit insurance certificate, excluding liability for suicide, evidence *held* sufficient to warrant the court in refusing to direct. a verdict that the insured had not committed suicide.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 2009; Dec. Dig. ⟪825(3).]

5. INSURANCE ⟪819(1)—WEIGHT OF EVIDENCE—SUICIDE.

In an action on a fraternal benefit certificate, where the evidence of suicide is circumstantial, the defendant fails, unless the circumstances exclude with reasonable certainty any hypothesis of death by accident or by the act of another.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 2006; Dec. Dig. ⟪819(1).]

6. INSURANCE ⟪825(3)—QUESTION FOR JURY—SUICIDE.

In an action on a fraternal benefit certificate excluding liability for sui-cide, though the presumption is against suicide and the defendant must show it by clear and satisfactory evidence, where there is evidence so tending to support the defense that reasonable men might differ as to whether the inference of suicide or accidental death should be drawn, that inference must be drawn by the jury and not by the court.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 2009; Dec. Dig. ⟪825(3).]

⟪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. **INSURANCE ⊕⇒819(1)—BURDEN OF PROOF—SUICIDE.**
    In an action on a fraternal benefit certificate excluding liability for suicide, the defense of suicide should be established by clear and satisfactory proof, such as is required to establish a fraud.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § ,2006; Dec. Dig. ⊕⇒819(1).]

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Action by Bettie S. Parrish against the Order of United Commercial Travelers of America. . Judgment for defendant, and plaintiff brings error. Affirmed.

R. L. Gordon, Jr., of ,Louisa, Va. (Gordon & Gordon, of Louisa, . Va., on the brief), for plaintiff in error.

John A. Lamb, of Richmond, Va., and Harry L. Doud, of Columbus, Ohio (Lamb & Lamb, of Richmond, Va., on the brief) for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. Bettie S. Parrish, a resident of Fluvanna county, Va., brought this action as beneficiary of a certificate or life insurance policy issued to her son Eugene M. Parrish, as one of its members by the Order of United Commercial Travelers of America, an Ohio corporation.

By plea in abatement the defendant made the point that since the plaintiff is a resident of the Western District of Virginia and the defendant a foreign corporation, jurisdiction of the action was in the District Court for the Western District, and not the District Court for the Eastern District. This plea to the jurisdiction was overruled on the ground that the defendant had waived it by filing a general demurrer to the declaration. The demurrer was also overruled, and the defendant then set up these special pleas:

(1) That the plaintiff had failed to comply with the following provisions of the constitution of the order:

"In event of any accidental injury on account of which a death claim may be filed against the order, notice of the accident (not the results) must be given in writing to the Supreme Secretary within. ten days thereafter, stating the full name and address of the injured member, date and full particulars of the accident and the name and address of his medical attendant.

"In event of a death resulting from external, violent and accidental means, as hereinbefore provided, notice of the accident must be given as hereinbefore provided, and, in addition, notice of the death must be given in writing to the Supreme Secretary within ten days after the death."

(2) That Eugene M. Parrish had caused his own death by intentionally shooting himself in the head with a pistol; and the constitution of the order provided that there should be no liability under the policy for death resulting from intentional self-inflicted injury.

On the trial both plaintiff and defendant asked for a directed verdict. But the District Judge submitted the issues to the jury, with the result that a verdict was found for the defendant. Since the plea in abatement does not challenge the jurisdiction of the federal court,

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

but only raises the point that the action should have been brought in the Western instead of the Eastern District of Virginia, it may be laid aside for the moment; for the plaintiff, having brought the action in the Eastern District, cannot allege that it was not properly brought, and the point is important to the defendant only in the event that reversible error be found in the conduct of the trial on the merits.

[1] The plaintiff first contends that the notice 10 days after death required by the provision of the constitution above quoted has no application to a case of instantaneous death, and that the jury should have been so charged. The liability of the order as fixed by the constitution is for—

"bodily injury effected through external, violent and accidental means which alone and independent of all other causes shall occasion death immediately or within six months from the happening thereof."

It is therefore perfectly clear that the requirement of notice "in the event of death resulting from external, violent and accidental means as hereinbefore provided" applies to a death resulting "immediately" from the injury.

[2] It is true, as said in the argument of plaintiff's counsel, that cases might arise where from lack of knowledge of the death or other causes it would be impossible for the beneficiary to give notice 10 days after the death. But this is not a case of that kind. The fact that a contract may become impossible of performance from circumstances beyond the control of the party obligated does not affect its validity nor relieve from performance when possible.

[3] The instructions of the court on this point were equivalent to a direct instruction to the jury that the conditions as to notice and furnishing proof of loss had been waived by the defendant. It appears clearly from the record and from the excellent statement of the evidence in the brief of counsel for the plaintiff that the facts from which the jury were told they should infer waiver were either not disputed or established by uncontroverted testimony. Hence it is impossible not to infer that the jury must have found that the defendant had waived the requirements of the policy as to notice and proof of death, and there is no ground therefore for the plaintiff to complain of the failure to give a direct instruction that the defendant had waived the provision of its constitution pertaining to notice and proof of death.

The important question is whether the plaintiff was entitled to an instruction that Eugene M. Parrish had not committed suicide and that the plaintiff was therefore entitled to recover. On this subject the charge was as follows:

"The court charges you that on the issue of suicide raised by the defendant as a ground for avoiding the payment of the policy sued on, the burden of proof is upon the defendant to establish such defense. That the presumption, notwithstanding the finding of the dead body of the insured in the position described in the testimony, with his hands on the pistol lying between his legs, and the hole in his head, is that he met his death accidentally, and that the plaintiff is entitled to recover, unless the defendant can overcome the burden thus placed upon it; that is to say, unless the testimony excludes all reasonable hypothesis that the shooting was accidental, and you are convinced that the deceased intentionally took his life by inflicting the wound in his head."

The plaintiff's position is that the District Judge should have held and charged as a matter of law that the evidence did not exclude all reasonable hypotheses that the shooting was accidental, and that the verdict should be for the plaintiff.

[4] There was little difference as to the facts; the main issue is the inference to be drawn from them. Eugene M. Parrish was a traveling salesman about 25 years old, in excellent health, successful in business, sunny and bright in disposition, held in high esteem, and, so far as known, free from serious anxiety or trouble. Early in the afternoon of Thursday, May 27, 1911, he arrived at the Hotel Hamilton in Bristol. At supper he directed the waiter to have his breakfast on the table at 9:30 the next morning. The next morning he was found dead in his bed from a pistol shot which entered a little above the right temple. There were powder burns around the point of entrance of the ball, and on the left forefinger and perhaps the thumb. One of the witnesses testified that the ball had entered at right angles with the head, and that in his opinion the pistol could not have been fired more than 18 inches away from the head. Deceased was lying on his back, dressed except his coat and vest, with his body turned a little to the left side, and his feet on the floor. The right hand was resting across his body and the left hand nearly straight on the bed. The pistol was on the bed between his thighs pointing from one to the other. One chamber had been discharged, all the others were loaded. A box containing cartridges was on the mantel. The evidence was conflicting as to whether the deceased had recently acquired the pistol or had owned it for some time. Scattered on the hearth were a quantity of papers which had been torn into small pieces. Some were found to be orders for goods or other business memoranda and some letters. Two or three letters were in a woman's or boy's handwriting. A post card was formed from some of the pieces which had on it a picture of a man and woman walking and conversing, and this writing:

"Have you had a walk like this lately. Had a long letter from Miss M. H. You ought to see what she said, you said about me. Will show you soon."

The two doors to the room were locked, and there was nothing to indicate the presence of any other person in the room at the time of the tragedy.

[5] Did this evidence require the District Judge to direct a verdict for the plaintiff, or to leave the issue of accidental death or suicide to the jury? In Cosmopolitan Life Ins. Co. v. Koegal, 104 Va. 619, 52 S. E. 166, the Supreme Court of Appeals states the rule that:

"Where the evidence of self-destruction is circumstantial, the defendant fails, unless the circumstances exclude with reasonable certainty any hypothesis of death by accident or by the act of another."

We cite a few of the many authorities holding this rule to be now unquestioned and restating it in different forms: Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308; Life Ins. Co. of Va. v. Hairston, 108 Va. 832, 62 S. E. 1057, 128 Am. St. Rep. 989; Metropolitan Life Ins. Co. v. De Vault, 109 Va. 392, 63 S. E. 982, 17 Ann. Cas. 27; Sou. Atl. Life Ins. Co. v. Hurt, 115 Va.

398, 79 S. E. 401; Cochran v. Mutual Life Ins. Co. (C. C.) 79 Fed. 46; Fidelity & Casualty Co. v. Egbert, 84 Fed. 410, 28 C. C. A. 281; Tackman v. Brotherhood of Am., 132 Iowa, 64, 106 N. W. 350, 8 L. R. A. (N. S.) 974; Cady v. Fidelity & Casualty Co., 134 Wis. 322, 113 N. W. 967, 17 L. R. A. (N. S.) 260; Wilkinson v. Ætna Life Ins. Co., 240 Ill. 205, 88 N. E. 550, 25 L. R. A. (N. S.) 1256, 130 Am. St. Rep. 269; Krogh v. Modern Brotherhood of Am., 153 Wis. 397, 141 N. W. 276, 45 L. R. A. (N. S.) 404; Bohaker v. Travelers' Ins. Co., 215 Mass. 32, 102 N. E. 342, 46 L. R. A. (N. S.) 543; Boynton v. Equitable Life Ins. Soc., 105 La. 202, 29 South. 490, 52 L. R. A. 687; Mallory v. Travelers' Ins. Co., 47 N. Y. 52, 7 Am. Rep. 410.

[6] In the Virginia cases and all others to which we have referred the question was not whether the jury should have been directed to find for the plaintiff, but whether a verdict in favor of the plaintiff should be set aside on the ground that the evidence conclusively proved suicide. In view of the frequency of suicide it cannot be doubted that some courts have gone very far in applying the rule of presumption against it; but all the authorities agree that although the presumption is against suicide, and the defendant must take the burden of showing it by clear and satisfactory evidence, and that the jury should be so instructed, yet where there is evidence so tending to support the defense of suicide that reasonable men might differ as to whether the inference of suicide or accidental death should be drawn, then the inference must be drawn by the jury and not the court.

[7] We find no clearer statement of the test required by common sense than that thus given in Life Ins. Co. of Va. v. Hairston, supra, by the Supreme Court of Appeals of Virginia speaking through Judge Keith:

"We are of opinion that the defense of suicide should be established by clear and satisfactory proof, such as is required to establish a fraud."

In Leman v. Manhattan Life Ins. Co., 46 La. Ann. 1189, 15 South. 388, 24 L. R. A. 589, 49 Am. St. Rep. 348, the verdict in favor of the defendant on the issue of suicide was set aside, the court saying:

"In this condition of the record there is no adequate basis to refer the death to the intentional act of the deceased. If there are indications that point to suicide, there are other features not consistent with that theory."

While that case and this are similar in some of the facts, there are important differences. There, as here, there was proof of death, cheerfulness, and apparent happiness, and absence of any known reason for suicide. The circumstances of death are thus stated by the court:

"The body, found with the wound from a gunshot, causing death; the discharged pistol, wedged, or as if it had been forced, on the thumb of the right hand; the body reclining on the sofa as of one sleeping; the left arm rested on the breast; the right leg crossed on the left; the head in the usual position of one in repose; and there being no evidence of any convulsive movement, if we correctly translate the technical word 'jactitation,' used by the physicians who testify. The pistol was 'tightly wedged' to the thumb, so as to require force to remove it. The question is whether these appearances point to suicide to the exclusion of any other cause. Why not, with equal potency, to accidental death or death by the hand of another?"

In the present case there was evidence that the deceased was somewhat depressed when he left home; that there were powder burns at the wound and also on the left forefinger, indicating discharge of the pistol very close to the temple, and the use of the right hand in firing it and of the left in holding it very close to the temple. Taken in connection with this evidence, the tearing up of a large number of letters and other papers was a circumstance of significance.

We cannot doubt that these facts might well exclude in the minds of reasonable men any other inference than that the deceased intentionally shot himself; and that the issue was properly submitted to the jury.

In view of this conclusion the question of venue is of no importance. Affirmed.