## NEW YORK LIFE INS. CO. v. BRADSHAW.

(Circuit Court of Appeals, Fifth Circuit. November 22, 1924.)

No. 4212.

**1. Insurance ⬅➡665(6) — Evidence held to show suicide by insured.**

Evidence *held* to show that insured intentionally shot himself, and to be inconsistent with hypothesis of accidental death.

**2. Insurance ⬅➡646(7)—Presumption against suicide rebuttable.**

Presumption against suicide is rebuttable, and cannot prevail, except in absence of evidence as to cause of death, or where evidence thereof is conflicting.

**3. Insurance ⬅➡668(13)—Under policy, evidence consistent only with insured's suicide required instruction that beneficiary was entitled to recover premiums paid only.**

In action on life policy, providing that, in case of insured's suicide within two years, insurance should be limited to amount of premiums paid, evidence *held* to call for instruction that beneficiary could recover only amount of premiums paid.

In Error to the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

Action by Mrs. Caroline Bradshaw against the New York Life Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Shepard Bryan and Grover Middlebrooks, both of Atlanta, Ga., and Barry Wright, of Rome, Ga. (Louis H. Cooke, of New York City, Bryan & Middlebrooks, of Atlanta, Ga., and Willingham, Wright & Covington, of Rome, Ga., on the brief), for plaintiff in error.

G. E. Maddox and Geo. A. H. Harris, Jr., both of Rome, Ga., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. The defendant in error recovered judgment on a life insurance policy issued to her husband in November, 1921. The insured died in February, 1922. The policy was for the sum of $10,000, and contained a provision for double indemnity in case of death resulting directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental cause. The policy contained the following provision: "In the event of self-destruction during the first two insurance years, whether the insured be sane or insane, the insurance under this policy shall be a sum equal to the premiums thereon which have been paid to and received by the company, and no more."

The answer to the petition averred that the insured committed suicide, and tendered the amount of the one premium which had been paid in full settlement of all liability under the policy. At the conclusion of the evidence the court refused to give a requested charge to the effect that there could be no recovery except of the amount tendered by the defendant. The court instructed the jury that the plaintiff was not entitled to recover under the double indemnity provision, on the ground that she had not sustained the burden of proving that the death of the insured was accidental within the meaning of that provision.

[1] There was uncontroverted evidence to the following effect: The night prior to his death the insured occupied a room with his wife and three children; the oldest child being about eight years of age. The wife, the plaintiff in the suit, arose at about 6 o'clock in the morning; the insured remaining in bed while plaintiff dressed. As soon as she was dressed, plaintiff went into an adjoining room to build a fire; her husband and the three children remaining in the room she left, the oldest child then being awake and out of bed. While plaintiff was attempting to build a fire in the adjoining room, and very soon after she entered that room, she heard a shot, and immediately returned to the room in which were the insured and the children. She found the insured lying on the bed with a pistol wound in his head and a pistol lying near his body, one of the two cartridges in the pistol then being empty. That pistol belonged to the insured. He had had it for many years, and was accustomed to sleeping with it under his pillow or by the side of the bed. It was a double-barreled Derringer, one barrel on top of the other, about four or five inches long. The shooting of it required that it be cocked and that pressure be exerted on the trigger. The open wound was in the insured's left temple, over the left ear, and the bullet went straight through his head, and could be felt under the skin on the right side in a position similar to that of the place of entry on the left side. The insured was left-handed. The skin was burned right where the bullet entered. The powder burns were only around the opening. For the skin to be burned as it was, the muzzle of the pistol when it was fired had to be very close. If, when the pistol was fired, the mouth of it was six inches or more from the wound, there would have been powder burns on the face farther away from the wound. There was evidence tending to prove that the insured had been in

poor health for some time prior to his death; that he had been much troubled by sleeplessness; that he was worried and anxious about going to a hospital, pursuant to the advice of his doctors, to submit to an operation for the removal of his tonsils; and that he was mentally depressed because of the condition of his health, and because of some business troubles.

The plaintiff testified to the effect that the insured, shortly before plaintiff left his presence to go into another room, said that he slept well from 12 o'clock on, talked with her in an interested way about one of the children, and that his voice and demeanor did not indicate excitement or anything unusual. The above-mentioned uncontroverted evidence required the conclusion that the death of the insured was caused by a bullet fired from his pistol when it was in such a position with reference to his head that, when it was fired, the bullet would go practically straight through his head from a point over his left ear towards his right temple, and that when the pistol was fired the muzzle of it was very close to the place where the bullet entered.

[2] The presumption against suicide or self-destruction is a rebuttable one, and cannot properly prevail, except in the absence of evidence as to the cause of death, or where there is such evidence, and it is conflicting, or some of it is consistent with a reasonable hypothesis of death by accident or by the act of another. Agen v. Metropolitan Life Ins. Co., 105 Wis. 217, 80 N. W. 1020, 76 Am. St. Rep. 905; Cosmopolitan Life Ins. Co. v. Koegel, 104 Va. 619, 52 S. E. 166; Parrish v. Order of United Commercial Travelers, 232 F. 425, 146 C. C. A. 419; Gavin v. Insurance Co., 149 Iowa, 152, 126 N. W. 906; Lindahl v. Supreme Court I. O. O. F., 100 Minn. 87, 110 N. W. 358, 8 L. R. A. (N. S.) 916, 117 Am. St. Rep. 666. In the instant case there was, as above indicated, evidence as to the cause of the death in question. None of that evidence had any tendency to prove that any one other than the insured was responsible for his death. The hypothesis of accidental death is inconsistent with facts established by uncontroverted evidence. It is not reasonably conceivable that it was by accident that there was a concurrence of the facts that the pistol was cocked, that when it was fired it was in the position which it may be supposed would have been selected by its left-handed owner if he had the purpose to bring about certain and instantaneous self-destruction, and that when it was in that position it was fired

by the exertion of the required pressure on the trigger.

[3] It is not fairly open to question that the uncontroverted evidence of circumstances under which the insured came to his death convincingly supported the conclusion that it resulted from his own voluntary act, and that no phase of the evidence adduced supported a different conclusion as to the cause of his death. To say the least, the state of the evidence was such as not to warrant a verdict in favor of the plaintiff, except for the amount tendered by the defendant. It follows that the court erred in refusing to give the above-mentioned requested charge. Barrett v. Virginian Ry. Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092. Because of that error, the judgment is reversed, and the cause is remanded, with direction that a new trial be granted.

Reversed.