## DAVIS v. RELIANCE LIFE INS. CO. OF PITTSBURGH, PA.

(Circuit Court of Appeals, Fifth Circuit. March 6, 1926.)

No. 4696.

**1. Insurance ⊜646(7)—Burden of proving suicide rests on insurer.**

The burden rests on defendant in an action on a life policy to establish the defense of suicide, overcoming the presumption against it by a preponderance of evidence, though the evidence may be circumstantial.

**2. Insurance ⊜665(6)—Evidence held to establish defense of suicide of insured.**

Evidence *held* sufficient to sustain the burden of proof resting upon an insurer to establish the suicide of insured.

In Error to the District Court of the United States for the Southern District of Mississippi; Edwin R. Holmes, Judge.

Action at law by Mrs. Leona M. Davis against the Reliance Life Insurance Company of Pittsburgh, Pa. Judgment for defendant, and plaintiff brings error. Affirmed.

T. J. Wills, of Hattiesburg, Miss., for plaintiff in error.

W. Calvin Wells, of Jackson, Miss., for defendant in error.

Before WALKER and FOSTER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This was an action brought by the plaintiff in error against the defendant in error in the District Court for the Southern District of Mississippi to recover on an accident insurance policy for the death of the insured by alleged accidental means, and was instituted by his sister, who was the beneficiary named in the policy.

[1] A single question is presented—whether the insured came to his death by suicide. The law of the case is well settled, and not disputed. It is conceded by counsel that recovery for a self-inflicted death, whether insured was sane or insane, is excluded by the terms of the policy; that the burden was on the defendant to establish the fact that the insured purposely killed himself;

that there is a presumption against death by suicide, in the absence of proof of the cause of death, or when the proof is conflicting; and that the burden is not required to be sustained by proof beyond all reasonable doubt, but only by a fair preponderance of the evidence, and that circumstantial evidence may be sufficient to overcome the presumption and sustain the burden. New York Life Ins. Co. v. Weaver (C. C. A.) 8 F.(2d) 680; New York Life Ins. Co. v. Bradshaw (C. C. A.) 2 F.(2d) 457; Cooley, Briefs on Insurance, vol. 4, pp. 3346 and 3363.

[2] In the light of these legal principles, the question is whether the evidence in the record overcame the presumption against suicide and sustained the burden resting on the defendant to show that the insured purposely killed himself. The District Judge held that it did and directed a verdict for the defendant.

The insured lived at Wiggins, Miss. He was a single man, whose only near relation was his sister, the beneficiary. He was engaged in the lumber and mercantile business, having an interest in a sawmill, together with others, among whom were the witnesses Batson and Holleman. He had no family troubles and no serious business worries. On the morning of the day before he was shot, he was at the sawmill near Carnes, Miss., in which he was interested. While there he asked his partner, Batson (according to Batson's evidence), for some of his private papers that he had been keeping in the office safe. While Batson was getting the papers for him, he told Batson in substance that he was tired of life and was going to kill himself, as soon as he had gotten his affairs in shape, and that he intended to shoot himself in the manner the evidence on the trial tended to show that he did in fact. He said, further, in answer to Batson's question, that he had thought upon how suicide would affect his future life, and had convinced himself it would be all right. He also said he was not going to disclose his purpose to any one else, except his partner, Holleman, and that, if either Batson or Holleman disclosed his purpose to others or attempted to interfere with it, he would kill them, and he declared that there was nothing wrong with his mind.

As a matter of fact, he did not make the same disclosure to Holleman, though he saw and talked with him normally and about other things after he had talked with Batson. Batson told Holleman of the insured's disclosure to him, and they both were seriously enough impressed by it to telephone a physician at Wiggins to try and see the insured and to dissuade him from his purpose. The insured, after securing the papers from the safe, went to his home at Wiggins. On the morning of the next day he left Wiggins in a Ford coupé for Hattiesburg, which was about 35 miles distant. At a point called McInnis' Springs, on the highway between Wiggins and Hattiesburg, and about a mile from Hattiesburg, his dead body was found in the road beside his car, about 11 o'clock in the forenoon, by the witness Allen. It was evident from the situation that he had driven his car out of the main road to get to the spring, and had alighted from his car on the right and east side of it, and that he was shot, or had shot himself, while he was on the outside of his car with his own pistol. The evidence concededly excludes any possibility that he was shot by another. He had with him a check for $4,000, payable to himself, about $30 or $40 in money, and some other valuables. He had not been robbed, and there were no signs of a struggle, either upon the ground or upon his person or clothing.

The insistence of the plaintiff is, not that he was killed by another, but that he was accidently shot by his own pistol while he was taking it from a small hand bag, which was found open on the seat of his car under the steering wheel, and which had in it a drinking cup and his papers. Plaintiff's contention is that he was in the act of moving the pistol from the hand bag, in order to put it in his pocket and have it on his person, when he reached Hattiesburg, and that in doing so the pistol struck either the steering wheel, or its post, and accidently discharged itself with fatal results. The defendant's contention is that he got the pistol from his hand bag with the purpose of shooting himself, a purpose he carried into effect.

The evidence as to the situation and as to the physical facts was not in conflict. The body of the insured was lying upon the ground with its face up on the east side of the car, which was headed north towards Hattiesburg; his head being further from the car than his feet. His left hand was beside his left hip, and his right hand was extended partly away from his body, and his pistol was lying on the ground three or four inches from it. One chamber of the pistol had been recently discharged, and the others were still loaded, when the pistol was found. The bullet found in the car was in

all respects like those found in the pistol. The bullet had entered the right temple of insured, passed through his head, and left it on the left side, a little above the top of the left ear. There were powder burns on his left temple. The bullet had passed through the upholstery of the car, and had struck metal in the back of the car, which it dented, but did not penetrate. Blood was still oozing from the wound when the body was found by the witness Allen. The pistol had a safety device in the back of the handle, which had to be released before the trigger would yield to pressure. The release was accomplished by pressing a spring in the handle, and then the pistol could be fired by pulling the trigger.

Persons who were at the scene before the body was removed examined the course of the bullet as manifested by the signs in the body of the car, and one of them testified that it was there demonstrated by experiment that the course of the bullet was consistent with the course a bullet would have taken if the insured had shot himself in the right temple while standing on the ground with his feet near or under the fender on the east side of the car, and leaning slightly over into the car. This was in line with defendant's contention. Plaintiff's contention was that the insured had his head under the steering wheel, while he was removing his pistol from his hand bag, and that while his head was in this position his pistol struck the steering wheel or post, discharged by accident, and killed him.

From the evidence relating to the situation and physical facts, as detailed, we are convinced that the death of the insured came from a self-inflicted shot. It does not seem reasonable that an accidental discharge could have accounted for it, considering the situation of the body, the location of the pistol with reference to the right hand of the insured, the nature of the wound, the course of the bullet, the improbability of an accidental discharge from a pistol of the character that caused the death, and the strained position necessary to account for the wound, if caused by an accidental discharge of the pistol. Laying aside Batson's evidence entirely, we still think that without it the only rational conclusion to be adopted is that the insured met death by his own hand. However, there is no reason for discrediting Batson's evidence, shown by the record. It was that of a close friend of the insured, who is not shown to have any reason to testify adversely to his beneficiary, except as impelled by the truth of what he testified to.

His testimony was not in itself unreasonable or improbable, and it impressed the District Judge, who had the witness before him, as being the truth. It furnished a reason for the suicide. Without it the record would show no motive for the insured's act. It also reflected on the intent of the insured by his statement that he was planning to kill himself.

We think the District Judge could have reached no other conclusion than that the evidence showed convincingly enough to overcome the presumption against suicide, and to sustain the burden resting on the defendant to make out the defense of death by suicide, that the death of the insured was caused by his own voluntary act, and the judgment of the District Court is affirmed.