## FRANKEL v. NEW YORK LIFE INS. CO.
### No. 390.

Circuit Court of Appeals, Tenth Circuit.
Aug. 3, 1931.

J. M. Grubbs, of Cushing, Okl., for appellant.

W. F. Wilson, Jr., of Oklahoma City, Okl. (W. F. Wilson and R. E. Owens, both of Oklahoma City, Okl., and Louis H. Cooke, of New York City, on the brief), for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.

The insurance company was obligated by a policy issued to Sam Frankel to pay his representatives or assigns $10,000 in case of his death, and a double indemnity if it should result solely from an external, violent, or accidental cause. He died on December 7, 1928, as the result of a gunshot wound on the previous day. The company refused to pay the double indemnity, and this suit was brought by the administratrix to recover it. Her petition alleged the death was due to an external, violent, and accidental cause. The answer of the company was that it was due to suicide.

The case came on for trial to a jury. The plaintiff rested, after introducing the policy and proofs rendered to the company. The defendant interposed a demurrer to the evidence which was submitted. Thereafter, at plaintiff's request, the case was reopened, and she introduced further evidence. The defendant then demurred to the entire evidence. The court, after reviewing the facts and citing authorities, decided that the evidence was insufficient to support a finding upon any reasonable hypothesis except of suicide, sustained the demurrer, and rendered judgment for the company.

The plaintiff appeals and assigns six errors for reversal. One of them is that the trial court ruled she had the burden of proof. Three others complain of the admission of evidence, consisting of the reports of two deputies to the sheriff that the case was a suicide, and a letter found in Frankel's pocket from his brother, dated November 23, 1928, advising him not to quit business, to move to another location, to advertise but not to put on a half price sale, etc. The last two assignments challenge the ruling on the demurrer and the judgment.

■ The record does not disclose that the burden of proof was imposed on the plaintiff. It is said to have occurred because the court would not first rule whether the plaintiff had need to introduce the additional evidence. But her election to introduce it without exception was a waiver of error.

The main question before us is whether the trial court erred in withdrawing the case from the jury and deciding it in favor of the company. This calls for a review of the evidence.

Frankel, formerly a merchant at Yale, Okl., engaged in business at Borger, Tex., in August, 1928. Early on December 6, witness White went to the store to verify an advertisement he had prepared at Frankel's request for the sale of the stock. He found Frankel unconscious on the floor at the rear end of the store, with a gunshot wound in his head, which had entered over the left ear and emerged slightly higher on the right side. He was lying in a curved position, a Colt's Automatic pistol beside him in the curve near his left hand, and an empty shell from the pistol on the floor at his back. His upper left arm was under the body and the lower arm and hand at right angles to the body. As he breathed, the forearm would work up and down. White placed a guard at the front door, and ran a block to call two of the sheriff's deputies, who soon came to the store.

A pool of blood of the size of a hat, at Frankel's head, had increased on his return to three feet. Powder burns were found on the left side of his head, indicating the pistol was fired at close range. He was left-handed. To fire the pistol, it was necessary to have the side safety down, grip the handle, and pull the trigger. It could not be discharged by falling or a blow. The pistol had some blood on it. If it was fired at the left side, the ejected shell would have gone out behind him. The course of the bullet was through a hat box six feet south of Frankel's head and eight feet from the floor, and it lodged in the ceiling twelve or fourteen feet high and at a point ten feet south of his head. There was a partition across the storeroom, eight feet from the rear, the back door being elevated three steps. Frankel's head lay toward the rear, and his feet even with the partition door. There was a lot of household effects occupying a space of six by eight feet at a point three feet from his body.

The back door was barred and all the windows were fastened. There was no evidence of a struggle, nothing was disturbed, and on a search no one was found hiding in the store. After the deputies came, $200 or $300 was found in the safe and some money in the cash register.

When Deputy Baird went in the store the previous day to buy a coat, Frankel was not alert to make a sale, as he had been theretofore, but appeared to be in a stupor. When White was there the previous day Frankel was much worried about the business, wished to make a sale, and arranged for the advertisement.

Witness Rosensweig, who had worked for Frankel at Yale and Borger, found him attached to his wife and two children, always in good humor, and without indication he was tired of life. He and his brother had $25,000 worth of merchandise at Yale and some merchandise at Cushing. He said Frankel had some trouble in ousting a man from a business lot at Borger. Mrs. Rosensweig testified she was employed in the store until the night of December 6; that after Mr. Turrentine was there a week earlier, Frankel later told her he had sold to him, and expressed happiness over it, as well as his dissatisfaction with the living conditions at Borger. Several witnesses testified to close associations with him, his attachment to his family, and his cheerful disposition.

Mrs. Frankel testified he and his brother had considerable property at Yale and Cushing, Okl.; that the business at Borger was sold and it realized $4,500 over the bills. His stock at Cushing was sold to the brother for $6,000, and he had some corporate stock which had paid a dividend. She also gave an account of his plans on the day of his death, to visit the bank, close up the sale, and go with the family in a car to Amarillo, Dallas, and Tyler, then to Cushing, settle the partnership business there, and start in business at Tulsa. He told the older boy to don a new suit for the trip. She also said he had a happy disposition and loved his family. She was permitted to testify over objection

that in the proofs of the death one of her answers was that he shot himself, but she disclaimed knowledge of it as well as of the report of suicide by the doctors and witnesses. He had two other policies in which he first named as beneficiaries his wife or surviving son, next his representatives or assigns, and finally his wife or son.

■ Appellant invokes the rule that there is a presumption a death is not due to suicide but to accident, and contends that this together with the evidence required a submission of the case to the jury. The presumption is one of law. It is indulged because self-destruction is "contrary to the general conduct of mankind; it shows gross moral turpitude in a sane person." And a party is entitled to the benefit of the presumption, in the absence of evidence respecting the cause of a death. Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 1363, 32 L. Ed. 308. But the plaintiff had the burden of proving the fact necessary to establish the liability of the insurance company, and the legal presumption that might aid her could be of value only under circumstances leaving the cause of death in doubt. Supreme Tent K. of M. v. King (C. C. A.) 142 F. 678; New York Life Ins. Co. v. Bradshaw (C. C. A.) 2 F.(2d) 457; New York Life Ins. Co. v. Weaver (C. C. A.) 8 F.(2d) 680; Mutual Life Ins. Co. v. Hatten (C. C. A.) 17 F.(2d) 889; 1 C. J. 496. As was aptly said in Von Crome v. Travelers' Ins. Co. (C. C. A.) 11 F.(2d) 350, the legal presumption disappears where there is evidence of suicide. In this case, there was an ample showing of enlightening circumstances on the subject.

■ It was ruled in Mutual Life Ins. Co. v. Graves (C. C. A.) 25 F.(2d) 705, the presumption against suicide is overcome by evidence showing the death was self-inflicted, or facts inconsistent with any reasonable hypothesis of death by accident, or circumstances and conditions leaving no room for any reasonable hypothesis but suicide, and it is where the facts in any particular case are disputable or are of such character that different minds might reasonably draw different conclusions therefrom, a question is presented for the determination of the jury. And the practice is well sustained of directing a verdict in favor of an insurance company, when the evidence is inconsistent with any reasonable hypothesis but suicide. Supreme Tent K. of M. v. King, supra; New York Life Ins. Co. v. Bradshaw, supra; New York Life Ins. Co. v. Weaver, supra; Davis v. Reliance Life Ins. Co. (C. C. A.) 12 F.(2d) 248; Von Crome v. Travelers' Ins. Co., supra; New York Life Ins. Co. v. Alman (C. C. A.) 22 F.(2d) 98. There was the same result in this case, without complaint of the procedure.

■ Two theories are advanced by appellant's counsel to show there was an issue for the jury in this case. One is assassination. But it depends wholly on a prior difficulty over the possession of a town lot and it is too remote for serious notice. The other is the assured might have been in the act of removing the pistol for storage with his household effects and might have stumbled at the rear steps and accidentally gripped and discharged the weapon in an effort to regain his balance. But this would have put mere conjecture against substantive evidence of suicide. It is our opinion that the uncontroverted physical facts leave no room for such an issue. We are firmly convinced that the location of the wound, the adjacent powder burns, the course of the bullet, the position of the body and arm, the fact that the assured was left-handed, the acts necessary to fire the pistol, and the place where the pistol and empty shell were found, are so forceful as evidence as not only to render an accidental shooting extremely improbable but to exclude any reasonable conclusion except suicide.

We have not overlooked the contention that there was evidence to support the theory of an accident, consisting of circumstances tending to show that the assured had a composed mental attitude and a motive opposed to self-destruction. But it suffices to say that they are unavailing to detract materially from the showing of undisputed facts which to any reasonable mind are little short of demonstration.

The administratrix was not entitled to have this unfortunate case submitted to the jury. A finding in her favor could not be allowed to stand, and the trial court would have been required to set it aside, in the exercise of sound judicial discretion. New York Life Ins. Co. v. Weaver, supra; Barrett v. Virginian Ry. Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092; Small Company v. Lamborn, 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720.

■ There was no reversible error in the admission of evidence to which there was objection. A sufficient reason is that it may be eli-

minated without affecting the necessary result in this case.

The action of the trial court must therefore be sustained. We find no sufficient reason for reversing the judgment. It is accordingly affirmed.